58 P.(2d) 1204

## STATE ex rel. ATTORNEY GENERAL v. STATE TAX COMMISSION.

### No. 4147.

Supreme Court of New Mexico.

May 23, 1936.

Quincy D. Adams, Asst. Atty. Gen., and G. L. Reese, Jr., Dist. Atty., of Carlsbad, for relator.

J. M. Hervey, of Roswell, and J. O. Seth and E. R. Wright, both of Santa Fé, amici curiæ.

BRICE, Justice.

This is an original proceeding by mandamus, brought for the purpose of compelling the respondent, the State Tax Commission, to place on the tax rolls certain property, as provided by sections 141-502 to 141-505 of the New Mexico Statutes, Ann.Comp.1929. As stated in the brief of amici curiæ: "There is but one issue involved in this proceeding and that is the question as to whether or not the property specifically described in the petition and the alternative writ, and hereinafter referred to as equipment, is taxable separately and specifically under the provisions of the general tax code designated as section 141-502 et seq., or whether such equipment under the terms and provisions of Chapter 83 of the Laws of 1925 known as the Production Tax Act are included for taxation purposes in the production or output of such wells, and taxed therewith."

This property as described in the alternative writ is as follows: "(1) Casing in place in such wells. (2) Tubing in place in said oil wells and used in the production of oil therefrom. (3) Gate valves at the surface of such oil wells used in regulating the flow of oil therefrom and the pressure of the gas in said wells. (4) Derricks and rigs used in the drilling of said wells and maintained in place over said wells for use in operating said wells and cleaning and

repairing same, and the insertion therein of tubing and other instrumentalities for the maintenance and operation of said wells. (5) Separators used at each of said wells for the purpose of separating the oil from the gas produced from said well. (6) Flow lines used for the purpose of conveying oil from the said wells to the tanks in the immediate vicinity of said wells. (7) Measuring and receiving tanks used in the immediate vicinity of the wells for the purpose of the temporary storage of oil and its measurement preliminary to its discharge into the pipe lines and for the purpose of separating the water from the oil, which said tanks are of approximately five hundred barrel (500 Bbl.) capacity. (8) Engines, boilers, electric motors and transmission lines, pumps and pumping equipment used in the operation of such wells where pumping is necessary in extracting oil therefrom. (9) Storage tanks used for the temporary storage of oil in the field where wells are situated. (10) Warehouses used for the storage of supplies necessary for the operation of such wells and for the drilling of other wells. (11) Dwelling houses used for living quarters of employees engaged in the operation of said wells. (12) Miscellaneous supplies, materials and equipment kept on hand for the making of necessary repairs and replacements of the foregoing equipment."

Chapter 83 of the New Mexico Session Laws of 1925 (sections 97-401 to 97-406, N.M.Comp.St.Ann.1929), provides for taxing the production of oil and gas wells, and in substance provides that every owner or operator of any oil well or gas well shall make a verified return to the State Tax Commission among other requirements, showing the total quantities of oil and gas produced during and on hand at the end of February, May, August, and November of each year, the current market value thereof at the place of production, the royalty paid or due on account of such production, and to whom payable. From such return and other available information, the State Tax Commission is required to determine the net value of such oil and gas by deducting from the market value at the well royalties paid to the United States, Indian tribes or Indian wards of the United States or the state of New Mexico; and "less a further deduction of fifty per cent as allowance for production costs and amortization." This so-called "net value" is certified to the assessor of the county in which such wells are located "as the taxable valuation of the output of such well." The assessor of the county is required to enter such valuation on a special tax roll "and assess and extend the taxes thereon at the rates levied and assessed upon the last tax filed with the county treasurer upon other property in the county and district in which such well is located." Section 5 of the act (section 97-405) is as follows: "97-405. Taxation in lieu of all other taxes. Taxes so collected shall be distributed in proportion to the various levies applicable to the district in which said oil or gas well is located. The tax provided herein shall be in lieu of

all other taxes on such oil wells or gas wells or on their production."

Section 97-406 is as follows: "97-406. Returns. The first return required for the year 1925 shall be made on or before the tenth day of August, 1925, and shall cover the period from January 1, 1925, to July 1, 1925, and thereafter returns shall be made quarterly as above specified. Taxes on the output of such oil wells or gas wells for the period up to December 31, 1924, shall be covered by existing laws and not in any manner affected by this act, *and the equipment belonging to such owner or operator used in the operation of such well.*"

The words in italics in section 6 (section 97-406) were not in the act when originally introduced, but were inserted as a floor amendment in the state Senate. The proposed floor amendment as adopted was as follows: "Amend Section 6 of Senate Bill 134 by changing the period at the end of said section to a comma and adding the following: 'And the equipment belonging to such owner or operator used in the operation of such well.'"

The contention of respondents, as stated in the brief of amici curiæ, is: "We expect to show that this act fully covers the taxes upon the above described equipment which the relator is seeking to compel the State Tax Commission to place upon the rolls and to put an additional tax upon, and this is by reason of the express provisions of the Production Tax Act as set forth in the words at the conclusion of section 6 above mentioned, and if not, then by the 'in lieu' provision at the conclusion of section 5 and to show further that the tax provided for in this Act is a property tax beyond all question, and that it violates no provision of the Constitution of the State of New Mexico, as will be contended by relator."

Section 1 of article 8 of the Constitution of New Mexico is as follows: "Taxes levied upon tangible property shall be in proportion to the value thereof, and taxes shall be equal and uniform upon subjects of taxation of the same class."

By the terms of section 3 of article 8, certain specific property is exempt from taxation, and by section 5 thereof the Legislature is authorized to exempt from taxation certain other specific property; and no other property is or can be exempted. The Constitution, in effect, classes tangible property into that exempt from taxation, that which may be exempted, and that which must be taxed. It is agreed by the parties that the property in question is subject to taxation, but respondent claims it is in fact taxed consistently with the Constitution, while relator denies this. Respondent relies largely on decisions of the Supreme Court of Oklahoma which construe that state's Constitution and statutes on the same subject, and state in substance that the Oklahoma Constitution is not more liberal than that of New Mexico in its limitation on the taxing power. It is true that when the ad valorem method is used in that state, then such property must be taxed in proportion to value; but section 22 of

article 10 of the Oklahoma Constitution permits the classification of property for taxation purposes, *and the valuation of different classes by different means or methods.* There is no provision in that state's Constitution limiting its Legislature to the taxation of tangible property by the ad valorem method exclusively, or that it be taxed in proportion to value, as in that of New Mexico. Assuming that the Oklahoma oil and gas tax is a property tax on tangible property as respondent contends, it does not necessarily follow that the ad valorem method of taxation is used there. Whether the Oklahoma statute would be constitutional if enacted here cannot be decided, but it is more favorable to the state than the corresponding statute of New Mexico. The intent of the Oklahoma statute is that the tax levied and collected shall be equivalent to an ad valorem tax on all the property involved; but no such intent can be read into the New Mexico statute. The argument that the equipment, houses, etc., used in connection with the oil business would ultimately be worn out in producing oil, and therefore the value is in the oil, is not at all convincing. This argument might be sound if we were dealing with an income tax, but not a tax on tangible property. All property is ultimately worn out when used in any character of business. The farmer's implements, the rancher's fencing, windmills, and improvements on ranches, the oil company's machinery, the merchant's fixtures, the lawyer's library; all these are tangible property, subject to taxation under the Constitution and cannot escape taxation by a so-called "in lieu" provision whereby a clear exemption is effected. Assuming that the tax is a property tax, it is based on a 50 per cent. valuation of the oil only, itself tangible property, and the value of none of the property mentioned in the petition is taken into consideration in a constitutional sense in fixing the value. The act itself (section 2 [section 97-402]) reads as follows: "From such return and such other information as may be available, the commission shall determine the net value of such quarterly output, being the market value thereof at such well, less any royalties on such quarterly output paid or owing the United States, or to any Indian tribe or Indian, being wards of the United States, or the state of New Mexico, less a further deduction of fifty per cent. as allowance for production costs and amortization, and said commission shall certify such net value to the assessor of the county in which such well is located as the taxable valuation of the output of such well."

If this provides for a tax on tangible property in proportion to value it is on the oil alone. It is not necessary to place any construction on section 97-405 and section 97-406 of the statutes; but were we to do so it would be our duty to hold them constitutional if possible. If one construction will render it unconstitutional and another not, the latter will be adopted. State v. Eldodt, 33 N.M. 347, 267 P. 55. The last resort would be to follow respondent's theory and lift the last part of sec-

tion 97-406 after the comma, and place it at the end of the preceding paragraph, as respondent contends; this renders the statute unconstitutional by providing for the exemption of such property from taxation. The phrase could follow the words "such oil wells or gas wells" in the same section so that it would read "taxes on the output of such oil wells or gas wells and the equipment belonging to such owners or operators used in the operation of such wells shall be covered by existing laws, etc."

As respondent depends largely upon the decisions of the Supreme Court of Oklahoma, we call attention to the fact that the State Board of Equalization of Oklahoma has authority to determine whether a tax imposed on production is greater or less than a general ad valorem tax would be on all the property subject to taxation, including the value of "oil, gas or mineral lease, or of the mining or mineral rights, the machinery, equipment, appliances used in actual operation of, in and around any such well or mine, the value of oil, gas, asphalt, or any of the said mineral ores produced and any other mineral of taxable value in lieu of which the tax herein is levied." It has the power and it is its duty to raise or lower the rates so that the tax imposed would equal an ad valorem tax on all the property, which if followed in practice is an exact substitute for an ad valorem tax; In re Skelton Lead & Zinc Company's Tax, 81 Okl. 134, 197 P. 495; but the New Mexico State Tax Commission has no such power.

The decisions of the Oklahoma Supreme Court are not very helpful, since neither the Oklahoma Constitution nor the corresponding statute is in effect substantially like that of New Mexico, and the holdings of that court lack uniformity.

Respondent cites McHenry v. Alford, 168 U.S. 651, 18 S.Ct. 242, 246, 42 L.Ed. 614. The organic act of Dakota Territory provided that no law shall "be passed impairing the rights of private property; nor shall any discrimination be made in taxing different kinds of property; but all property subject to taxation shall be in proportion to the value of the property taxed." 12 Stat. 241, § 6. A gross earnings tax was levied upon all railroads, which, it was contended, violated the provisions of the organic act above quoted. The Supreme Court stated: "The language of the act in its first section seems to be so plain as to be beyond the necessity of construction. The act says that the payments therein provided for are 'in lieu of any and all other taxes upon any railroads, except railroads operated by horse power, within this territory, or upon the equipment, appurtenances or appendages thereof, or upon any other property situated in this territory belonging to the corporation owning or operating such railroads, or upon the capital stock or business transactions of such railroad company.' These payments are also said to be 'in full of any and all other taxation and assessments whatever upon the property aforesaid.' "

The court quoted other parts of the act to show the intention was to include lands owned by the railroad but not used in its operation, which the territory sought to separately tax. The court stated: "It is also not the case of an exemption from taxation, but the substitution of one method for another. The land here in question is, in addition, closely connected with the business of the company."

And further: "Upon a full consideration of the subject, we are persuaded that there is nothing in any provision of the act of 1883 for the taxation of the gross earnings which violates the letter or the spirit of the organic act. * * *

"It is a tax upon the lands and all the other property of the company; but instead of placing a valuation upon the lands and other property, and apportioning a certain amount upon such valuation directly, as was the old method, a new one is established, of taking a percentage upon the gross earnings as a fair substitute for the former taxes upon all the lands and property of the company; and when it is said, as it is in this act, that the tax collected by this method shall be in lieu of all other taxes whatever, it would seem that it might be claimed with great plausibility that a tax levied under such circumstances and by such methods was not in reality a tax upon the gross earnings, but was a tax upon the lands and other property of the company, and that the method adopted of arriving at the sum which the company should pay as taxes upon its property was by taking a percentage of its gross earnings."

It seems, however, that the decision of the court was based on a claim of compromise and not on the point cited by respondent, as the following from the opinion indicates: "We do not think it necessary, however, to decide this question, because we are of opinion that by the act of 1889 the legislature proffered the company a compromise as to the taxes claimed to be due, and the company accepted the same."

The gross income tax there levied was against the whole property of the railroad company as a going concern and by a system of reasoning the court held that it was within the provision of the organic act we have quoted. The New Mexico statute is not a provision for a tax on the property of any oil company as a going concern. It provides for a tax on oil produced from wells, in proportion to 50 per cent. of its value, and not on any of the property sought to be placed on the tax rolls, nor could it be held so by any reasonable construction.

Respondent cites a number of cases from Oklahoma, holding that a similar tax has been held to be a property tax (previous decisions of the same court held otherwise). We are not inclined to review these cases, as it is immaterial whether it is a property tax or an excise tax. However, it is not a direct tax on the real estate from which the oil is extracted, nor on the oil or gas well, nor on their production; but *in lieu thereof*. It is not a perennial tax on property as such, for the oil may be stored in tanks for years and can be taxed but once. If the owner prefers to keep the oil

in the earth, he pays no taxes on the property, though it may have a market value of millions of dollars. If he brings the oil to the surface he pays tax, not in proportion to the value of the property connected therewith, but in proportion to an arbitrary "net value" of the oil produced, arrived at by first deducting royalties paid, then 50 per cent. of the remainder "as allowance for production cost and amortization." Its market value is taken into consideration, but only in arriving at an arbitrary figure to be used as *value for taxation*. We call attention to the opinion of this court in Flynn, Welch & Yates, Inc., v. State Tax Commission, 38 N.M. 131, 28 P.(2d) 889, wherein the so-called Severance Tax Law (chapter 72, N. M. Session Laws 1933) was construed, and held to be an excise tax. Amici curiæ state the Oklahoma laws are as favorable to the oil industry in the matter of taxation as those of New Mexico. Though this is perhaps immaterial to a decision here; we call attention to the fact that in Oklahoma and some other states oil royalties and oil leases are held to be tangible property, subject to taxation; though such property does not appear to be taxed here. Central Coal & Coke Co. v. Carselowey (D.C.) 40 F.(2d) 540, construing the statute of Oklahoma; State ex rel. Attorney General v. Arkansas Fuel Oil Co., 179 Ark. 848, 18 S.W.(2d) 906; Board of Supervisors v. Superior Oil Corp., 210 Ky. 539, 276 S.W. 527; Waggoner Estate v. Wichita County, 273 U.S. 113, 47 S.Ct. 271, 71 L.Ed. 566, construing the Texas law. Hager et al. v. Stakes, 116 Tex. 453, 294 S.W. 835.

The peremptory writ of mandamus will issue, as prayed for.

It is so ordered.

SADLER, C. J., and HUDSPETH, BICKLEY, and ZINN, JJ., concur.