201 P.2d 345

## DILLARD et al. v. NEW MEXICO STATE TAX COMMISSION.

### No. 5131.

Supreme Court of New Mexico.
Dec. 18, 1948.

Dissenting Opinion Jan. 7, 1949.

Lynell G. Skarda, Dist. Atty., of Clovis, for appellees and cross-appellants.

E. P. Ripley, Tax Commission Atty., of Santa Fe, for appellant and cross-appellee.

BRICE, Chief Justice.

An omnibus petition was filed by the district attorney of the Ninth Judicial District in the district court of Curry County as authorized by Secs. 76-306 and 76-307, N.M. Sts. 1941, in behalf of sixteen owners of taxable property, each seeking correction of assessments or allowance of a soldier's or sailor's exemption against ad valorem taxes, as provided by Ch. 130, N.M.L. 1923, and amendments of that act made prior to 1947. The State Tax Commission answered for the state. The trial resulted in the allowance of seven claims, some of which it was held applied only to the petitioner's interest in community property; and the denial of nine claims, for one or more of the reasons stated in the court's conclusions of law. Judgments were entered accordingly. The state appealed from the judgments allowing three claims, and one from a conclusion of law in which a claim was denied on another ground; and the petitioners appealed from judgments in nine claims which were denied, and in four cases of partial denials of claims. The case is before us for decision on questions of law involving the construction of certain provisions of the state Constitution and the so-called Soldiers and Sailors Exemption Act just mentioned.

Sec. 5 of Art. 8 of the New Mexico Constitution is as follows:

"The legislature may exempt from taxation * * * the property of every honorably discharged soldier, sailor, marine and army nurse, and the widow of every such soldier, sailor, or marine, who served in the armed forces of the United States at any time during the period in which the United States was regularly and officially engaged in any war, in the sum of two thousand dollars. Provided, that in every case where exemption is claimed on the ground of the claimants having served with the military or naval forces of the United States as aforesaid, the burden of proving actual and bona fide ownership of such property, upon which exemption is claimed, shall be upon the claimant."

In pursuance of the authority granted the legislature of New Mexico by authority of the quoted section of the state Constitution, it enacted the following statutes (N.M.Sts. 1941 Comp.):

Sec. 76-111. "'Soldier' shall mean every honorably discharged soldier, sailor, marine and army nurse resident of New Mexico and who served in the armed forces of the United States for thirty (30) days or more at any time in which the United States was officially engaged in any war, including resident unmarried widows of such soldiers, sailors and marines."

Sec. 76-112. "Excepting a dishonorable discharge, or one for misconduct, any dis-

charge, including furloughs to the reserve or order relieving a member of a reserve corps from active duty, shall constitute an honorable discharge for the purposes of this."

Sec. 76-113. "Real and personal property of every soldier shall be exempt from taxation in the sum of two thousand dollars ($2,000). Said exemption shall apply to all taxes levied in the year 1933 and all which may thereafter be levied, but the said exemption shall not apply to any property held in trust by any soldier, except to the extent of the legal beneficial interest of such soldier therein. In addition to said exemption said soldiers are hereby exempted from the payment of road taxes heretofore or hereafter levied. Provided, however, that such exemption from taxation shall not be permitted to be claimed by nor allowed to any soldier who has not, prior to January 1, 1934, acquired residence in the state of New Mexico."

Sec. 76-114. "The county assessors shall annually prepare a list of soldiers resident in their respective counties entitled to said exemption and shall allow said exemption to the soldiers whose names appear in said list. Said list shall be prima facie evidence that the persons whose names appear therein are entitled to the exemption allowed by this act (§§ 76-111—76-117), subject to the provision in section 6 (§ 76-116) regarding proof of ownership of the property upon which such exemption is claimed. Any soldier entitled to said exemption whose name is omitted from said list may require his name to be inserted therein upon presenting proof to the assessor that he is entitled to the exemption granted herein, and upon refusal of the assessor to insert his name in said list, such person may petition the district court, without cost and, upon proper proof the court shall require the assessor to insert his name in the said list, but such application to the assessor or a petition to the court must be made or filed prior to the delivery to the county treasurer of the tax roll for the year for which exemption is sought."

Sec. 76-117. "Any person claiming or knowingly receiving said exemption with respect to property of which he is not the real owner, or any person claiming or knowingly receiving said exemption when not entitled thereto by any trick, fraud, evasion or subterfuge, or any person who is not entitled to the said exemption and who shall secure or attempt to secure the benefits of same by conveying his property to a person entitled to exemption under this act (§§ 76-111—76-117) with intent to secure said exemption to such person not entitled thereto, and any person violating any provision of this act, (§§ 76-111—76-117) shall be punished by a fine of not less than $500.00 nor more than $3,000.00 or imprisonment in the penitentiary not less than one (1) year nor more than three (3) years or by both such fine and imprisonment at the discretion of the court, and any or all property conveyed

with intent to violate any of the provisions of this act (§§ 76-111—76-117) shall escheat to the state upon proper proceedings therefor."

The principal question is whether the soldiers and sailors exemption statutes apply to all of the community property of the soldier or sailor and his wife, or only to his interest therein.

We stated in State ex rel. Attorney General v. State Tax Comm., 40 N.M. 299, 58 P.2d 1204, 1206:

"Section 1 of article 8 of the Constitution of New Mexico is as follows: 'Taxes levied upon tangible property shall be in proportion to the value thereof, and taxes shall be equal and uniform upon subjects of taxation of the same class.'

"By the terms of section 3 of article 8, certain specific property is exempt from taxation, and by section 5 thereof the Legislature is authorized to exempt from taxation certain other specific property; and no other property is or can be exempted. The Constitution, in effect, classes tangible property into that exempt from taxation, that which may be exempted, and that which must be taxed."

And in Sims v. Vosburg, 43 N.M. 255, 91 P.2d 434, 435:

"All tangible property in New Mexico is subject to taxation in proportion to value, and should be taxed, unless specifically exempted by the constitution or by its author-

ity. Secs. 1, 3 and 5 of Article VIII, N.M. Constitution; Albuquerque Alumnae Ass'n [of Kappa, Kappa Gamma Fraternity] v. Tierney, 37 N.M. 156, 20 P.2d 267; State v. State Tax Comm., 40 N.M. 299, 58 P.2d 1204."

This court has held that the wife has a present, vested, one-half interest in the community property, in every respect equal to that of the husband, Beals v. Ares, 25 N.M. 459, 185 P. 780; Baca v. Village of Belen, 30 N.M. 541, 240 P. 803; In re Miller's Estate, 44 N.M. 214, 100 P.2d 908. In the Baca case [30 N.M. 541, 240 P. 804] it was said:

"In this state we have the community property system taken from the civil law. * * * Here however, she (the wife) has a present, existing, vested interest, equal in all respects to the interest of the husband."

In the Miller case, [44 N.M. 214, 100 P. 2d 912], we said:

"The Chavez Estate case (In re Chavez's Estate, 34 N.M. 258, 280 P. 241 [69 A.L.R. 769]) however, clearly recognized the rule to be that each spouse, irrespective of survivorship, at all times had an ever-present, and existing, vested interest in the community property equal unto each other."

The property of the wife of a soldier or sailor is not exempt from taxation, nor can the legislature enact a statute that will have that effect without an amend-

ment authorizing it. Indeed, petitioners do not claim that the wife's interest is entitled to exemption; but argue that because it has heretofore been the custom of taxing officers to allow the exemption, that their construction of the Constitution and statutes should be followed by us. Such concession on our part not only would be contrary to the decisions of this court, but contrary to the Constitution as construed by us, Sims v. Vosburg, supra; State ex rel. Attorney General v. State Tax Comm., supra. The same question was decided by the Supreme Court of Arizona in Oglesby v. Poage, 45 Ariz. 23, 40 P.2d 90, 93. We approve the following statement from the opinion of the Arizona court in that case:

"Since the interests of the husband and wife in the community estate are each vested and capable of being separated, and since the constitution of Arizona clearly states that it is the property of the husband which is not subject to taxation while that of the wife is, it follows that such exemption only affects the husband's interest in the community, and it is the duty of the county assessor to assess the wife's undivided one-half interest in the property involved."

We have emphasized the proposition that the wife's interest in community property is vested and in every respect equal to that of the husband. Baca v. Village of Belen, supra; In re Miller's Estate, supra. The legislature by authority of the Constitution, has the power to exempt from taxation the property of persons who served in the armed forces of the United States, to the amount of $2000. The Chavez Estate case, 34 N.M. 258, 280 P. 241, 69 A.L.R. 769, cited, was referred to in the Miller case, wherein we said:

"The Chavez Estate case * * * clearly recognized the rule to be that each spouse, *irrespective of survivorship,* at all times had an ever-present and existing, vested interest in the community property equal unto each other." (Our emphasis.) Any attempt on the part of the legislature to include the wife's interest as being exempt from taxation would be frustrated by the Constitution, and no such attempt has been made.

It is said that the husband has the control and management of the community property during marriage, from which it is argued that it belongs to the husband in the sense intended by the exemption provision of the Constitution and state laws. We need to cite but one authority (that of the Supreme Court of the United States) to show that the husband's management and control in no manner adds to his interest in the community property. That court stated in Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 59, 75 L.Ed. 239:

"* * * The community must act through an agent. This Court has said with respect to the community property system (Warburton v. White, 176 U.S. [484] 494, 20 S.Ct. 404, 408, 44 L.Ed. [555], 559, that 'property acquired during marriage with community

funds became an acquet of the community and not the sole property of the one in whose name the property was bought, although by the law existing at the time the husband was given the management, control, and power of sale of such property. This right being vested in him, not because he was the exclusive owner, but because by law he was created the agent of the community.'

"In that case, it was held that such agency of the husband was neither a contract nor a property right vested in him, and that it was competent to the legislature which created the relation to alter it, to confer the agency on the wife alone, or to confer a joint agency on both spouses, if it saw fit—all without infringing any property right of the husband. (Citing Arnett v. Reade, 220 U.S. 311, 31 S.Ct. 425, 55 L.Ed. 477, 36 L.R.A.,N.S., 1040).

"The reasons for conferring such sweeping powers of management on the husband are not far to seek. Public policy demands that in all ordinary circumstances, litigation between wife and husband during the life of the community should be discouraged. Law-suits between them would tend to subvert the marital relation. The same policy dictates that third parties who deal with the husband respecting community property shall be assured that the wife shall not be permitted to nullify his transactions. The powers of partners, or of trustees of a spendthrift trust, furnish apt analogies.

"The obligations of the husband as agent of the community are no less real because the policy of the State limits the wife's right to call him to account in a court. Power is not synonymous with right. Nor is obligation coterminous with legal remedy. The law's investiture of the husband with broad powers, by no means negatives the wife's present interest as a co-owner."

It is thus made plain that the vested interest of the wife is in no manner affected by the husband's agency for the community; and we adopt this holding as applicable to our community property laws. The legislature has given this control to the husband, and the legislature can take it away. In fact the legislature has provided that under certain conditions the wife may be substituted for the husband as the head of the community with all the authority given him by law. Sec. 65-405, N.M.Sts. 1941.

This court has held that the wife's interest in the community property is vested in her and is equal to that of the husband; and the Supreme Court of the United States has held that the mere fact that the legislature had made the husband the agent of the community, does not affect the vested interest of either, all of which we have, and do, approve; it seems that the question as to ownership is settled. Indeed, the Miller and Baca cases make it plain that irrespective of the power of the husband to manage and control the community property it does not affect the interest of either spouse.

Whether the people, as is suggested, had in mind when voting on the amendment of the Constitution authorizing this exemption, Art. 8, § 5, that the community property of the husband and wife would be entitled to its benefit, may be doubted. The people of this state, generally, know that the wife owns a half interest in community property. It has been the subject of many suits, and women are pretty well advised as to their interest, and so is the electorate. The people knew when they voted on the question that the husband alone was given an exemption, and that the wife was not entitled to one until she became a widow.

It is said that the taxing authorities construed the law as allowing the exemption on the community property. Sometimes the construction placed on a law by the executive department is taken into consideration where the law must be construed because of some doubt as to its meaning. But we know of no authority which holds that the courts are bound by such construction if the meaning of the statute and the constitution that authorizes it is so clear, and so unambiguous that its meaning cannot reasonably be misunderstood. The rule is well stated in City of Roswell, N.M., v. Mountain States T. & T. Co., 10 Cir., 78 F.2d 379, 382 (a New Mexico case) as follows:

"The long interpretation of a statute by the executive authority charged with its administration is not binding upon a court, but it is persuasive and will not be lightly overturned if the act is of doubtful meaning."

The exemption provisions of the Constitution and statutes are plain, unambiguous and not of doubtful meaning.

It is said that the $200 exemption statute for heads of families has been construed for a hundred years as allowing an exemption of community property. In the first place the statute had not been in existence a hundred years; and secondly, it was amended in 1925 (Ch. 102, Sec. 3, N.M.L. 1925) by including the wife's property in the exemption. It is apparent from the amendment passed in 1925 that the legislature included the wife's property in that exemption because it was of the opinion that the exemption of the property of the "head of the family" did not include her interest in community property. We do not decide the question.

The fact that the soldier's widow is entitled to the exemption is persuasive that the soldier's wife is not until she becomes a widow, at which time she is entitled to her own exemption, not that of her husband.

It is argued, that as the wife's interest in community property goes to the husband at her death, whereas his interest is subject to his testamentary disposition, the husband must have a greater interest in the community property than the wife. This court answered that question in Re Miller's Estate, supra, in which we said,

"That each spouse, irrespective of survivorship, at all times has an ever-present and existing vested interest in the community property equal unto each other," and we so held in Re Chavez's Estate, supra. No one has a vested interest in property after death. The power of disposition during his lifetime, to become effective after death, may be given or taken away, at the will of the legislature. The fact that the laws of some states permit the wife to dispose of her community property by will during the husband's lifetime is totally immaterial. The same legislature may change the law in favor of the wife or husband without disturbing vested rights.

█ "The state's power over property passing by will or through the statutes of descent and distribution is plenary. It may take all of the estate if it sees fit, and, if it may take all, it may take any part less than all. The state's right to direct its disposition is unlimited." In re Ward's Estate, 183 Wash. 604, 49 P.2d 485, 487, 102 A.L.R. 496.

█ "The right to transmit property is not a fundamental right of the citizen, but is a right conferred upon him by legislative enactment, which enactment must be within the scope of constitutional powers. The state may regulate and control the devolution of property, even to the extent of repealing the laws relating to wills, descents, and distributions, and declare that upon the death of a party his property shall be applied to the payment of debts, and the residue appropriated for the use of the public." Commonwealth v. Fleet's Ex'r, 152 Va. 353, 147 S.E. 468, 469.

█ "The nature and extent of testamentary power must be considered at the outset, in order to appreciate its position in our law and the force and effect of statute.

"According to the great weight of authority in the United States, the right to make a will is in no sense a property right or a so-called natural right. It did not exist for realty at common law, nor at one time for more than a fraction of a testator's personalty. It is therefore not a right protected by any of the constitutional provisions whereby property is protected, which is sometimes expressed by saying that it is not a natural right; nor an inherent right; but it is purely a stautory right, subject to the complete control of the legislature. * * *" Page on Wills, Lifetime Ed., Sec. 25.

The trial court did not err in holding that the interest of the wife in community property was not subject to exemption under the act in question.

It is asserted that a soldier or sailor qualified as one entitled to the exemption, but whose name is not among those on the assessor's list, as provided by Sec. 76-114, supra, does not waive it by failure to make application to the assessor to place his name upon the list; or if such application is made to and refused by the assessor, he does not

waive his exemption if he fails to petition the district court to require the assessor to place his name on such list.

The statute not only requires that such application and proof shall be made or petition filed and proof furnished, but states: "But such application to the assessor or a petition to the court must be made or filed prior to the delivery to the county treasurer of the tax roll for the year for which exemption is sought."

The Constitution did not grant these exemptions, but authorized the legislature to do so in its discretion. The legislature could make any regulations which in its wisdom it might deem necessary or helpful is facilitating the allowance of the exemptions. In states whose constitutions have allowed soldiers exemptions by self executing provisions, reasonable mandatory regulations may be made. Chesney v. Byram, 15 Cal. 460, 101 P.2d 1106; State v. Allred, 67 Ariz. 320, 195 P.2d 163. It is obvious that some regulation is required to determine those who are entitled to the exemption. To that end the legislature provided that a list should be made by the assessor of each county, that would be prima facie evidence of this right. The names of all persons to whom exemptions may be allowed must appear thereon, either originally or by adding names thereto through application to the assessor, or by order of court made prior to the delivery of the tax rolls to the county treasurer. The list is complete when the rolls are so delivered, and no names can be added thereafter. This regulation is simple and easily understood, and within the legislative discretion to require.

The regulation merely carries out the constitutional requirement "that in every case where exemption is claimed on the ground of the claimant's having served with the military or naval forces of the United States as aforesaid, the burden of proving actual and bona fide ownership of such property upon which exemption is claimed shall be upon the claimant," and the legislative requirement: "In each case where exemption is claimed under this act, if the assessor has no personal knowledge that the person claiming same is the actual and bona fide owner of the property upon which the exemption is claimed, he may require proof of such ownership and the burden of proof thereof shall be upon the claimant." N.M.Sts.1941 Sec. 76-116.

There is nothing unreasonable about this requirement, and the district court has no authority to disregard it. It may be, as the Attorney General suggests, that the legislature did not contemplate that every soldier should go to the county seat and examine the assessor's list to ascertain if his name is on it, and we can see no occasion for him to do so. Ordinarily a letter with proof is all that would be necessary. It is enough to say that the burden is on the claimant to establish his right to an excep-

tion, in the simple and practical way the law directs. Most any of his fellow veterans are able to inform a claimant how to proceed to secure his exemption.

■ The trial court did not err in holding that claimants waived their rights to exemptions if they did not follow the statutory method of securing them.

It is asserted that a claimant whose name appears on the assessor's lists, prepared as required by Sec. 76-114, supra, must nevertheless annually establish his right to and claim his exemption each year, or such exemption is waived.

■ We are of the opinion that Sec. 76-114, means just what it says. It requires the assessor to prepare "a list of soldiers resident in their respective counties entitled to said exemption and shall allow said exemption to the soldiers whose names appear in said list." A soldier whose name appears on that list is entitled to his exemption, and the assessor "shall allow" it. He is not required to make application for exemption if his name appears upon the assessor's list, and upon the tax rolls as the owner of property. If he is married, it is presumed until it is shown otherwise by the claimant, that such property is community property; and the exemption will apply only to his half interest, unless he furnishes satisfactory evidence that the property standing in his name is his separate property.

■ It should be stated that it is incumbent upon the claimant to furnish the necessary proof to the assessor, if that official has not the knowledge, that will authorize his name to be placed on the list. The assessor is not required to search for this information or make inquiries to secure it. But if he has the knowledge that a soldier is entitled to the exemption, or it is furnished him, he is then required to place the soldier's name on the list. If he refuses, he may be required to do so by resort to the authorized district court proceeding.

■ It is said that soldiers discharged after January 1st in any year may claim their tax exemptions for that year.

It is provided by law that "every person, firm, association or corporation shall, in each year, make a declaration of all property subject to taxation of which he is the owner or has the control or management * * *. Such declaration shall be made of all property as it exists on the first day of January of each year * * *." N.M. Sts.1941, Sec. 76-203.

It is also provided that all property "shall be declared, listed, assessed and taxed in the county where it is situated on the first day of January of each year and shall be included in assessment lists to be declared to the tax assessor on or before the first business day of March * * *." Sec. 76-201, N.M.Sts.1941.

If the owner of property is not an honorably discharged soldier on January 1st of any year, then he is not entitled to a soldier's exemption for that year, because it is taxed to the owner and "as it exists on that day."

It is asserted that the widow of a soldier of World War I who served in the armed forces of the United States while officially at war, for more than thirty days and less than ninety days is not entitled to exemption on her 1947 taxes.

The original act required service in the army, etc., of only thirty days; but the Act of 1947, amended Sec. 76-111, Sts.1941 (Ch. 79, N.M.L.1947), by increasing the time of service to ninety days. The amendatory act became effective on March 13, 1947; whereas the property was taxed as of January 1, 1947, as it then existed. The question is whether the amendatory act applies to 1947 taxes.

The property was subject to taxation, and by law "declared, listed, assessed and taxed * * * on the first day of January of each year * * *." Sec. 76-201, N.M.Sts.1941. On January 1, 1947, the claimant's property was in effect taxed, the amount to be later determined. She was entitled to her exemption on that day, and the assessor was required by law to allow it.

The legislature that enacted the law could amend or repeal it. Louisville Water Co. v. Clark, 143 U.S. 1, 12 S.Ct. 346, 36 L.Ed. 55. No soldier, etc., or the widow of one, will be entitled to an exemption of taxes after 1947, who did not serve for 90 days in the armed forces of the United States while this country was officially at war.

The claims of Lucy M. Harris, No. 4; Mrs. S. A. Hawkins, No. 6; Fred McGinnis, No. 7; and Edward E. Brizendine, No. 13, are not contested in this court, and the judgment of the trial court correcting the description of the property in each case, is affirmed.

The other claims are disposed of according to the foregoing conclusions of law, as follows:

No. 1. The property of R. Leonard Dillard was incorrectly described. It does not appear that his name was on the assessor's list. He applied to the assessor for allowance of exemption, which was denied, but did not make application to the district court to require the assessor to place his name on the list.

We conclude that the trial court's judgment allowing the exemption should be reversed, in that the exemption was waived. It is affirmed as to the correction of the description of claimant's property.

No. 2. The claimant Pearl B. Bragg, an honorably discharged soldier, was denied exemption on 1946 taxes, as he was

not discharged from the army until July 26, 1946.

The judgment of the district court is affirmed, because soldiers discharged after January 1st of any year are not entitled to the exemption for that year for reasons heretofore stated.

No. 3. Benito U. Chaves, an honorably discharged soldier, was denied exemption by the district court because he did not claim it from the assessor and did not file his petititon in the district court as the statute requires, before the tax rolls were delivered to the county treasurer. The judgment is affirmed for reasons hereinbefore stated.

No. 5. C. F. Abrams, an honorably discharged soldier, claimed his exemption of the assessor for 1946 taxes, which was denied him. He failed to follow up by applying to the district court, prior to delivery of the tax roll to the assessor, to enter order requiring the assessor to place his name on the list of those entitled to exemption. The judgment is affirmed for the reasons hereinbefore stated.

No. 8. J. W. Powell was honorably discharged from the United States army on May 7, 1946. The trial court's judgment denying exemption of taxes for 1946 is affirmed for reasons hereinbefore stated.

No. 9. Mary A. Reynolds, widow of a soldier killed in action, claimed exemption of the assessor for taxes of 1946, which was denied. After the tax roll was delivered to the county treasurer she requested the district attorney to submit her petition to the district court for allowance of the exemption. The claim was denied by the district court. For reasons hereinbefore stated the judgment is affirmed.

No. 10. E. D. Rice, an honorably discharged soldier, claimed exemption of the assessor, and his name appeared upon the assessor's list. But his claim was denied by the assessor. No reason for denial appears in the record. The assessor was authorized to remove his name from the list if convinced he was not entitled to the exemption, but while it remains on the list it is prima facie proof that he is entitled to the exemption. There is nothing in the record to indicate he was not entitled to the exemption. The trial court denied the claim upon the ground that claimant failed to file his petition in the district court for allowance of exemption. The judgment is reversed with instructions to the trial court to allow the exemption for reasons hereinbefore stated.

No. 11. J. T. Shaw is an honorably discharged soldier. It does not appear from the record that his name is on the assessor's list, or that he applied to the district court to require the assessor to place it thereon. On November 1, 1946, he discovered that he had not been allowed an exemption, "and requested the district attorney to submit his petition to the district

court for allowance thereof." However, the tax rolls were delivered to the county treasurer on that day. It does not appear that such petition was submitted to the district court, nor that any order was entered requiring Shaw's name to be placed upon the assessor's list. The district court allowed the claim to the extent of claimant's community property.

. The judgment of the district court is reversed and remanded with instructions to deny the claim for the reasons hereinbefore stated.

No. 12. T. H. Richey is an honorably discharged soldier. He did not claim his exemption, but his name appeared upon the assessor's list. There is no other evidence in the record regarding claimant's right to exemption. The court denied the claim upon the theory that Shaw waived his right to exemption because he did not claim it, although his name was on the assessor's list; and because he failed to file a petition in the district court prior to November 1, the date of delivery of the tax roll to the county treasurer, "seeking allowance" of the exemption.

The assessor should have allowed the exemption for reasons hereinbefore stated. The judgment is reversed and cause remanded with instructions to the district court to allow the exemption, for reasons hereinbefore stated.

No. 14. James D. Wood is an honorably discharged soldier. He claimed his exemption and his name appeared upon the assessor's list. There is no evidence in the record to indicate that he is not entitled to the exemption. The list is prima facie evidence that he is entitled to the exemption, as the trial court held. The judgment of the trial court is affirmed.

No. 16. Mrs. J. E. Henderson is the widow of a World War I honorably discharged soldier who served in the United States army "for a period of more than thirty days and less than ninety days at a time in which the United States was officially engaged in war." She claims exemption for 1947 taxes. The sole ground of refusing the exemption was because her husband did not have ninety days service, in that the act of 1947, amending Sec. 76-111, Sts.1941 (Ch. 79, N.M.L.1947), had increased the time of service necessary to entitle a soldier to the exemption, from thirty days to ninety days. The trial court erred in holding that claimant was not entitled to exemption on taxes for 1947, for the reasons hereinbefore stated. The judgment is reversed and remanded to the district court with instructions to allow the exemption.

No. 17. Morris S. Dickenson is an honorably discharged soldier. It does not appear from the record that his name was on the assessor's list, or that he made any effort to have it placed thereon, until January 1, 1947. The tax rolls had long since been delivered to the county treasurer.

The judgment of the district court denying the claim is affirmed, for reasons hereinbefore stated.

No question is presented regarding the authority of the district attorney to present claims of exemptions for soldiers and others by proceeding under Sec. 76-306, N.M. Sts.1941, under which this proceeding was instituted, and we do not pass on the question, but call attention to In re United Power Co. Taxes for 1937, 44 N.M. 542, 105 P.2d 741, and the following cases decided under laws of which this section is amendatory: First State Bank of Bernalillo v. State, 27 N.M. 78, 196 P. 743; Bond-Dillon Co. v. Matson, 27 N.M. 85, 196 P. 323.

The judgments in Causes Nos. 2, 3, 4, 5, 6, 7, 8, 9, 13, 14, and 17 are affirmed. The judgments in Causes Nos. 1, 10, 11, 12 and 16 are reversed and causes remanded to the district court to enter judgments as directed herein.

It is so ordered.

LUJAN and McGHEE, JJ., concur.

SADLER, Justice (dissenting in part).

The opinion in this case heretofore filed by me is hereby withdrawn and the opinion to follow filed in lieu thereof.

From so much of the prevailing opinion as holds the veteran's exemption cannot be claimed out of community property as a whole, I dissent. The community estate as known and recognized in this state is sui generis. It is neither an estate in cotenancy, nor yet one in joint tenancy, although in the right of survivorship obtaining in the husband, it takes on a characteristic of the latter. In re Chavez's Estate, 34 N.M. 258, 280 P. 241, 69 A.L.R. 769. The husband's dominion over the community as its head in management and control is such that, save for necessity of the wife's joinder in conveying or encumbering the real estate, he acts as the virtual owner. 1941 Comp. § 65-403.

In this management and control, he may bind the community for debts and he alone can do so. Morris v. Waring, 22 N.M. 175, 159 P. 1002, and Fidel v. Venner, 35 N.M. 45, 289 P. 803. The entire community, whether consisting of real or personal property or both, may be seized and sold, not the husband's interest alone, to satisfy a judgment for debts so created. The same consequences attach to a judgment against him for a tort committed in his management of the community estate. He possesses the power of testamentary disposition over his half of the community. The wife does not, save as to any portion set apart to her by judicial decree for support and maintenance. 1941 Comp. § 31-108. His power to handle and transfer personal property of the community is limited only by the condition that he make no disposition in fraud of her rights therein.

It was with this background and general knowledge on the part of the people as a

whole of the husband's vast dominion and control over community property that they voted upon the constitutional amendment (Art. 8, § 5) authorizing the veteran's exemption and that the legislature itself acted in adopting the same. It is my settled conviction that the allowance of such exemption in the community estate as a unit, without differentiating between the separate interests of the spouses therein, accords with the true intent, both of the people in authorizing and the legislature in extending, the exemption in question. The rule of strict construction applicable to exemptions may not be employed to deny a meaning fairly obvious. Flaska v. State, 51 N.M. 13, 177 P.2d 174. Of course, as the prevailing opinion states, the wife has a present, vested one-half interest in the community estate. Beal v. Ares, 25 N.M. 459, 185 P. 780, and McDonald v. Lambert, 43 N.M. 27, 85 P.2d 78, 120 A.L.R. 250. Nevertheless, none can gainsay the fact that it is a "present, vested" interest *subject* to the powers and incidents in relation to same outstanding in the husband hereinabove enumerated.

If the prevailing opinion stands, then a means of accomplishing dissolution of the community in a manner not intended by adoption of the amendment authorizing a veteran's tax exemption, through sale of the wife's interest to satisfy tax delinquencies, is achieved through judicial decision. There is and was no statutory authority for it. Cf. Smedberg v. Bevilockway, 7 Cal.

App.2d 578, 46 P.2d 820; McClain v. Tufts, 83 Cal.App.2d 140, 187 P.2d 818; Grolemund v. Cafferata, 17 Cal.2d 679, 111 P.2d 641. When the veteran's exemption amendment was voted upon, governing statutes of long standing and well understood prescribed the conditions under which a dissolution of the community might be accomplished. Death, dissolution incident to divorce, and a statutory suit for dissolution following permanent separation (1941 Comp. § 25-702) represented the only means provided by law for dissolving the community. Any other method superimposed by judicial construction lacks statutory sanction and is unauthorized. Smedberg v. Bevilockway, supra, and McClain v. Tufts, supra. It is not to be supposed that the people in adopting this amendment intended that revolutionary changes in the nature and concept of the community estate, and the manner of dissolving it, should be wrought. In voting upon the amendment, the people well knew from acts of long standing that the community could be dissolved in certain prescribed ways and no other.

In Smedberg v. Bevilockway, supra, it was sought to reach the wife's interest in community real estate to satisfy a tort judgment against her alone but the effort failed. The California court based its conclusion on dual considerations: First, that to permit this to be done would approve a forced division of the community property in a way not authorized by statute. In the second place, the court fortified its refusal by cit-

ing an analogy between the community estate and an estate by the entirety. In an estate by the entireties held by husband and wife, the survivor took the property owned jointly with the other free from a judgment against the decedent. Lunnen v. Hunter, 348 Pa. 402, 35 A.2d 292. And one of the tenants, acting alone, cannot sever the estate. 4 Thompson on Real Estate, Perm.Ed., 332, § 1804. Cf. Hernandez v. Becker, 10 Cir., 54 F.2d 542.

To limit dissolution of the community to the statutory means provided does not mean the community may not be made to satisfy just obligations and liabilities. But when it does so, it must be for such only as may claim against it as a whole, not against the undivided interests therein, the segregation of which will work its dissolution. The estate, as indicated, is sui generis. The separate interests of husband and wife in it are so delicately interwoven and interdependent that they may not be torn apart without destroying the whole and accomplishing a dissolution. The legislature has said when that can be done. In adopting this amendment the people did not intend that it should be done otherwise.

Counsel for cross-appellants urges with considerable force that practical construction by the taxing authorities in allowing the exemption from the community as a whole, universally employed in this state since 1923, when the first Soldier's Exemption Act (L.1923, c. 130) was passed, and

acquiescence in that construction by the legislature in subsequent amendments of the act (L.1933, c. 44, and L.1947, c. 79) calls for a reversal of the trial court's ruling denying it out of the community as a whole. My views accord with those of counsel in this connection. Furthermore, counsel's argument in this behalf is reinforced by practical construction of still another exemption statute in our laws.

The same constitutional provision which enabled the legislature to exempt from taxation the property of every honorably discharged soldier under the conditions stated, likewise authorized the legislature to exempt from taxation the property of each head of a family to the amount of two hundred dollars. Such an exemption has existed from early territorial days (L. 1876, c. 17, § 1) and from the very beginning has been applied to the community as a whole. While it is true the legislature later, L. 1925, c. 102, § 3, expressly extended the exemption to property, title to which is held by the wife, as well as to property, title to which is held by the husband, the amendment merely copied and was declaratory of a practice already long established in the application of this exemption to the common property as a whole. If the majority opinion be correct in holding the veteran's exemption may not be so applied, then a construction employed in this state as to head of the family exemption for virtually 75 years, and to the veteran's exemption since its authorization in 1923, has

been wrong and without sanction of law all the while—an error it has taken seventy-five years to discover.

It is to be remembered that when the people adopted the constitutional head of family exemption, they were familiar with the practice universally followed since enactment of the statute in 1876 of satisfying the exemption out of common property. Certainly, they supposed it would continue application in the future as over the third of a century in the past. The prevailing opinion seeks to minimize the effect of this practical construction by reference to the 1925 amendment above mentioned authorizing satisfaction of the exemption from property, title to which is in the wife, as well as property, title to which is in the husband. The CHIEF JUSTICE, who writes for the majority, does not explain how this *statute* could have any validity as to property of the wife, except as the *constitution* may have authorized it. In conceding that the statute does so authorize, the majority necessarily concede that in adopting the constitution containing head of family exemption, the people adopted it as the same had been previously so long applied, namely, subject to satisfaction from the common property. Any attempt to apply the exemption to any property of the wife otherwise held, save where she herself is head of the family, would be without constitutional authorization and void.

In Temple Lodge No. 6 A. F. & A. M., v. Tierney, 37 N.M. 178, 20 P.2d 280, 284, this court dealt with a tax exemption which had back of it a long and uniform official interpretation. We held this interpretation by the taxing officials practically controlling. Among other things, we said:

"This early interpretation and uniform practice is highly persuasive, if not controlling. The principle is familiar that, in a case of doubt, courts will sustain the reasonable construction long and uniformly followed by the co-ordinate branches of the government. It is not comity alone that dictates this rule. It is because of the unfortunate and far-reaching results often produced by a judicial decision rendering illegal what has been theretofore recognized as legal. If this rule were not generally observed, legal decisions might, by their upsetting results, do more harm than good. In such cases it is deemed wiser to leave the desired reform to the political departments which can minimize the consequences of change by limiting its results to the future."

One of the strongest reasons supporting the rule which favors adoption of any reasonable official interpretation of long standing, as we pointed out in Temple Lodge No. 6, A. F. & A. M., v. Tierney, supra, is because of the unfortunate and far-reaching results, "rendering illegal what has been theretofore recognized as legal." It is difficult to imagine any more unfortunate,

or far-reaching result than one which will compel the reassessment and payment of taxes for the past decade on the wife's interest in community property on which veteran's exemption heretofore has been allowed, to protect its marketable character and avoid forfeiture at delinquent tax sales. Indeed, in many instances, where the property exempted is real estate, the confusion and hardship will be added to by reason of intervening transfers to innocent purchasers. When we recall that the same confusion and unbearable hardship will follow application of the majority decision to property on which the head of family exemption has been allowed out of community property, it seems the reasons for a holding otherwise ought to be deemed absolutely conclusive.

The practical construction, so long employed without question as to each exemption, is correct and carries out the true intent of the pertinent constitutional provision and of the legislature acting under it. The people adopted the veteran's exemption, fully mindful of the practice long followed in allowing head of the family exemption out of the community as a whole. They intended no practice in applying it different from that prevailing for more than a third of a century in reference to the head of family exemption.

As a matter of fact, the framers of the constitutional amendment in question no doubt felt it would be a work of supererogation to declare expressly what the language of the exemption itself fairly implies, namely, that it was to extend to the community as a whole. It authorized the legislature to exempt from taxation under the conditions named the property of every honorably discharged soldier and "the widow of every such soldier," etc. In acting under such authority the legislature extended the exemption to the widows of soldiers along with the soldiers themselves. In other words, within constitutional and statutory contemplation, the exemption being to the soldier while living and to his widow after death, the latter provision merely preserved to her an exemption already enjoyed by both in the common property.

There follow a few cases from other jurisdictions dealing with tax exemptions which, although not exactly in point, are persuasive of the correctness of the views here announced. Sherman v. Quinn, Cal. App., 179 P.2d 24, affirmed 31 Cal.2d 661, 192 P.2d 17; Village of Hibbing v. Commissioner of Taxation, 217 Minn. 528, 14 N.W.2d 923; Eysink v. Board of Supervisors of Jasper County, 229 Iowa 1240, 296 N.W. 376; Town of Wolf River v. Wisconsin Michigan Power Co., 217 Wis. 518, 259 N.W. 710, 98 A.L.R. 1369, and case note at 1372. Only the California case cited, reviewed first in the District Court of Appeal and, finally, by the Supreme Court, is from a state where the community property system prevails. And in that case, Sherman v. Quinn, supra, although the precise question

now presented was not litigated, a reading of the two opinions by the separate courts suggests strongly that the tax exemption of the veteran had been extended to the community as a whole and that, too, without question.

The one case cited in the prevailing opinion which, on its facts, presents the identical question before us is Oglesby v. Poage, 45 Ariz. 23, 40 P.2d 90. As said by the CHIEF JUSTICE in the case at bar, the Supreme Court of that state held the veteran's exemption must be confined to his interest in the community. It was denied application to the estate as a whole. There is no disposition on my part to underrate the force of the decision as a precedent against the position here taken. There are, however, factors which distinguish and, in my opinion, weaken its effect as such. In the first place, there is in the Arizona constitutional amendment (§ 2, Art. 9) which is self-executing, no extension of the exemption to the soldier's widow *as such*. The original provision, before amendment, adopted coincident with statehood, granted a property tax exemption to all widows, resident in ° the state, whether soldiers' widows or not. Hence, in construing the 1928 amendment extending the exemption to veterans, the Arizona Supreme Court, even though a community property state, could see no significance in the fact that widows of soldiers were to enjoy the exemption because all resident widows, whether widows of soldiers or not, had enjoyed such an exemption since statehood.

Furthermore, in submitting the amendment to popular referendum, and in voting upon it, the people of Arizona did so without that background of practical construction prevailing in New Mexico under which the head of family exemption had been so long applied to the community as a whole, without the propriety of the practice ever being so much as questioned. Indeed, Arizona has had no head of family exemption for taxing officials to construe, the people having defeated the proposal to create one submitted by the state legislature in 1939 (see Laws 1939, p. 368). It is worthy of mention, too, that the husband's dominion over the community estate is not so complete there as in New Mexico, so as to furnish a background of dominion and control in management, and survivorship following the wife's death, as to give him the appearance of virtual owner throughout their joint lives.

The wife in Arizona has the power of disposing of her share by will. Oglesby v. Poage, supra; Arizona Code (1939) § 39-109. The wife in New Mexico may not. 1941 Comp. § 31-108. When the New Mexico veteran claims the exemption in the community as a unit, he claims it in property which, in event of the wife's prior death, he gets, not by inheritance, In re Chavez's Estate, supra, but through sur-

vivorship. The wife can do nothing to defeat this right in him. Not so with the Arizona husband. When he claims the exemption out of the community as a whole, he is claiming it in property which, so far as his power to prevent be concerned, may pass to others through testamentary disposition by the wife upon her prior death.

The holy state of matrimony can suffer temporal dissolution only through an exercise by the state of its sovereign power; Hilton v. Roylance, 25 Utah 129, 69 P. 660, 58 L.R.A. 723, 95 Am.St.Rep. 82. Thus it is that marriage, once entered into by the parties, may not be dissolved except as expressly authorized by the state and upon grounds prescribed by it. 1941 Comp. § 25-701. The community estate is born with and of the marriage. It is designed to maintain and preserve the family as a unit. Forsythe v. Peschal, 34 Ariz. 380, 270 P. 865. It can no more be dissolved, save as expressly authorized by the legislature, or by the people in an unequivocal constitutional declaration, than may the marriage itself of which it forms an integral part. Smedberg v. Bevilockway, supra, and McClain v. Tufts, supra. The limitation placed on the veteran's exemption, by denying it application to the community as a whole, and compelling separate assessment of the wife's interest therein, will permit tax sale of her interest and thereby accomplish dissolution of the community without either legislative sanction, or constitutional intendment.

Feeling strongly that the people in adopting the veteran's tax exemption neither intended nor understood they were authorizing new means, additional to those so long obtaining of dissolving the community; nor that they were creating a basis for satisfying the tax exemption submitted, foreign to the practice prevailing and acquiesced in for more than forty-five (45) years in satisfying the head of family exemption, my disagreement with a contrary holding by the majority is herewith recorded. A rehearing should be ordered and an opposite result declared. The majority concluding otherwise.

I dissent.