478 P.2d 554

**J. F. HAIR, Plaintiff-Appellant and Cross-Appellee,**

**v.**

**Victor MOTTO, Jr., Mayor of the City of Bloomfield, and Robert W. Cassady, Clerk of the City of Bloomfield, Defendants-Appellees and Cross-Appellants.**

**No. 8965.**

Supreme Court of New Mexico.

Dec. 31, 1970.

Marvin Baggett, Jr., Farmington, for plaintiff-appellant and cross-appellee.

Joseph F. Burns, Aztec, for defendants-appellees and cross-appellants.

OPINION

WATSON, Justice.

On May 6, 1969, an election was held in the City of Bloomfield, New Mexico, for the purpose of voting on general obligation bonds for three municipal improvements. The canvass of the voting showed that the water system bonds passed 116 to 112; the sewer system bonds passed 114 to 112;

and the swimming pool bonds failed 89 to 133.

On June 5, 1969, an "Application for Recount" was filed against the mayor and clerk of the City. The plaintiff-appellant here alleged that he was a resident, a qualified elector, a property owner and a property taxpayer of the City who was qualified to vote and who did vote in the election, and that nine votes were illegal because the voters, although otherwise qualified, were either not property owners or had not paid a property tax during the year preceding the election as required by N.M.Const. art. IX, § 12, and by paragraph B of § 14–29–2 and paragraph A of § 14–29–6, N.M.S.A., 1953 Comp. (Repl. Vol. 4). This appeal is from the judgment finding the votes legal and dismissing the action.

The pertinent constitutional provision, art. IX, § 12, supra, reads as follows:

"* * * No such debt shall be created unless * * * submitted to a vote of such *qualified electors thereof as have paid a property tax therein during the preceding year * * *.* For the purpose, only, of voting on the creation of the debt, *any person owning property within the corporate limits of the city, town or village who has paid a property tax therein during the preceding year* and who is otherwise qualified to vote in the county where such city, town or village is situated shall be a qualified elector." (Emphasis added.)

Both of the statutes, §§ 14–29–2, supra, and § 14–29–6, supra, required the payment of a property tax on property located within the municipality during the year preceding the election.

The trial court found with respect to the nine challenged votes as follows:

"4. That James T. Stiffler and his wife, Charlotte Roe Stiffler; and Dale William Muns and his wife, Mrs. Dale William Muns; and Wayne D. McKinley, were all purchasers of and in possession of real property within the City of Bloomfield by way of escrow contracts. That the deeds to the respective properties had not been transferred to the respective purchasers. That the properties were carried on the tax rolls in the names of the respective contract vendors 'in care of' the respective purchasers.

"* * *

"6. That Mr. & Mrs. Bert R. Buchanan purchased real property by deed within the City of Bloomfield on December 6, 1968. They assumed the outstanding mortgage on the property and made monthly payments to the mortgage company, from December 6, 1968 to the time of election. Part of the monthly payments was for the purpose of paying the property tax assessed against the property. The mortgage company paid the ad valorem tax on the property for 1968 on November 22, 1968. The property was carried on the tax rolls in the name of Mr. & Mrs. Bert Buchanan at the time of the election.

"7. Mr. & Mrs. Edward C. Wagoner owned property within the City of Bloomfield. By operation of the Soldier's exemption as provided by law the property owned by the Wagoners was exempt from taxation and thus they had not paid a property tax within the twelve (12) months preceding the election."

It was admitted that those persons named in finding 4 paid the taxes, so the question presented there is whether they were "persons owning property" within the meaning of art. IX, § 12, supra. The question presented by findings 6 and 7 is whether each voter there named was a person "who has paid a property tax during the preceding year," as required by art. IX, § 12, supra, and §§ 14–29–2, supra, and 14–29–6, supra.

Very recently, in Board of Education of Village of Cimarron v. Maloney (decided December 7, 1970), 82 N.M. 167, 477 P.2d 605 (1970), we held that property ownership was an unconstitutional requirement for eligibility to vote in a special school

district general obligation bond election as being in violation of the U.S.Const. amend. XIV. This holding resulted from the decision in City of Phoenix, Ariz. v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970). There, the United States Supreme Court determined that no retroactive effect was to be given the decision except where the authorization was not final as of June 23, 1970 (the date of its opinion), and said:

"* * * In the case of States authorizing challenges to bond elections within a definite period, all elections held prior to the date of this decision will not be affected by this decision *unless a challenge on the grounds sustained by this decision* has been or is brought within the period specified by state law. * * *" (Emphasis added.)

There, the challenge was by a non-property owner whose right to vote was sustained. Here, the challenge is by a property-owning taxpayer challenging the right to vote of those alleged to be non-property owners or non-taxpayers. No constitutional question was raised below or is present in this appeal. Although we must conclude that our holding in Board of Education v. Maloney, supra, is not applicable here, we cannot entirely close our eyes to the reasoning of the Supreme Court in City of Phoenix, Ariz. v. Kolodziejski, supra. There, the court relied upon Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969), in determining that the differences between the interests of property owners and the interests of non-property owners in municipal projects was not sufficiently substantial to justify excluding the latter from the franchise to vote. (The holding in Cipriano, decided June 16, 1969, may be applicable to this case, although that decision also was to be applied prospectively.)

■ The facts here are undisputed. First, is the vendee in a real estate contract a "person owning property" within the statutory and constitutional requirements? Neither our Constitution nor our statutes

require the ownership or the payment of taxes on real property as distinguished from personal property; nor do they point out the extent of title or ownership that is required. Section 72–1–1, N.M.S.A., 1953 Comp., provides:

"All property, real, personal and intangible shall be subject to taxation, except as in the Constitution and existing law otherwise provided. * * *"

This would even include a lessee's property interest. Kirtland Heights v. Board of County Commissioners, 64 N.M. 179, 326 P.2d 672 (1958). Section 72–1–3, N.M.S.A., 1953 (1969 Supp.), specifically provides for the taxation of the equitable interest of the vendee of state lands. The separate assessment of undivided interests in land, except severed mineral interests, is not required. Kaye v. Cooper Grocery Company, 63 N.M. 36, 312 P.2d 798 (1957). We can only conclude that both the vendors and the vendees on the real estate contracts were "persons owning property." Fugate v. Mayor and City Council of Town of Buffalo, 348 P.2d 76, 97 A.L.R.2d 243 (Wyo.1959).

■ The second question is whether the persons identified in findings 6 and 7 paid a property tax in the year preceding the election. As to the Buchanans (Finding 6) who paid a portion of the 1968 taxes as a part of their monthly payment to the mortgagee who paid their tax, we believe our holding in Baca v. Village of Belen, 30 N.M. 541, 240 P. 803 (1925), is controlling. There, we held that a husband and wife were both entitled to vote "who has paid a property tax therein upon such community property during the year preceding the election, either *with his or her own hand, or by an agent,* * * *." (Emphasis added.) Although the agency relationship may not have existed until after the payment of the taxes, it did exist prior to the end of 1968. The Buchanans, as distinguished from either their sellers or their mortgagee, were interested in the election. They were the persons "primarily affected by the results. [They are] the one[s]

who must pay the additional taxes and bear the burden of the lien thus created." Junker v. Glendale Union High School District, 73 Ariz. 20, 236 P.2d 1010 (1951); Barcon v. School District No. 40, 103 Ariz. 311, 441 P.2d 540 (1968).

In Fugate v. Mayor and City Council, supra, it is noted that courts generally hold that the right to vote should be construed liberally. We could hardly dispute this rule in view of the recent Supreme Court pronouncements above mentioned. We recognized the same rule, however, as early as State ex rel. Read v. Crist, 25 N.M. 175, 179 P. 629 (1919).

Although the trial court found (No. 7) that Mr. and Mrs. Wagoner had not paid a property tax because of the operation of the soldiers' exemption (N.M.Const. art. VIII, § 5), it nevertheless concluded that they were eligible to vote. Since the court did not conclude that the requirements of art. IX, § 12, supra, or § 14–29–2, supra, or § 14–29–6, supra, were unconstitutional, it was implicit in the entry of its judgment that their failure to pay any tax because of the soldiers' exemption was nevertheless compliance with these requirements. Boone v. Smith, 79 N.M. 614, 447 P.2d 23 (1968). We agree with this conclusion.

The provision in art. IX, § 12, supra, limiting the voting on municipal indebtedness to those who have paid a property tax during the preceding year was in the original Constitution of this State. The solidiers' exemption was first authorized by an amendment to the Constitution in 1921. It has been amended several times since. Unlike the exemption provisions of the California and Arizona constitutions, it is not self-executing. Dillard v. New Mexico State Tax Commission, 53 N.M. 12, 201 P.2d 345 (1948).

Had the constitutional amendment itself granted the exemption on the property, as does N.M.Const. art. VIII, § 3 (to government bodies and charities), we might well conclude that it was a total exclusion of the property and could not be construed as payment of the tax. Morgan v. Board of Sup'rs, 67 Ariz. 133, 192 P.2d 236 (1948). This distinction in the types of exemptions is pointed out in State ex rel. Attorney General v. State Tax Commission, 40 N.M. 299, 58 P.2d 1204 (1936).

In Wylie Bros. C. C. v. Albuquerque-Bernalillo C. A. C. B., 80 N.M. 633, 459 P.2d 159 (1969), we said:

"* * * A constitution is a practical instrument adapted to common wants and designed for common use, and it is made and adopted by the people themselves. It must be construed as if intended to stand for a great length of time. Since it is an instrument of progress, its meaning should not be too narrowly or literally interpreted, but rather it should be given a meaning which will be consistent with new or changed conditions as they arise. If words are used therein that have both a restricted and a general meaning, the general must prevail, unless the context clearly indicates that the restricted meaning was intended. Flaska v. State [51 N.M. 13, 177 P.2d 174 (1946)]."

In Flaska v. State, 51 N.M. 13, 177 P.2d 174 (1946), we pointed out that the provisions of the soldiers' exemption amendment to the Constitution must be taken to mean what was meant in the minds of the voters when the provision was adopted. We reviewed the history and conditions existing at the time of the adoption and pointed out that, while other states had adopted bonuses for giving material assistance to their veterans, New Mexico chose to permit the legislature to grant an exemption not exceeding $2,000. We there said that the general, rather than the restricted, meaning of words should be used in interpreting the amendment unless the context clearly indicates that the limited sense was intended.

We cannot believe that the people of this state, by their expression of gratitude in 1921 to the veterans, intended to deprive those veterans who accepted this gesture of their franchise to vote on county and

municipal projects, or that they intended that veterans who owned property of less than $2,000 would have to pay for their vote by giving up part of their exemption.

. In addition, the exemption is more in the nature of a gratuity or bonus to the veteran or his widow as owners of the property rather than an exclusion of the property itself from taxation. Unlike the property exemption granted by art. VIII, § 3, supra, the veteran's property is placed on the assessment rolls. Sections 72–2–3 and 72–1–13, N.M.S.A., 1953 Comp. (1969 Supp.), and § 72–1–14, N.M.S.A., 1953 Comp. If the assessment exceeds the exemption and the tax on the excess is not paid, or if the exemption is not claimed or allowed, the lien for the tax is against the entire property. Sections 72–5–12 and 72–1–14 through 72–1–20, N.M.S.A., 1953 Comp..

■ The soldiers' exemption is actually the payment or forgiveness of that portion of the tax the legislature may determine within the constitutional limitation. If the veteran claims his exemption, he, in effect, consents to this payment by the state of his taxes. Neither art. IX, § 12, supra, nor §§ 14–29–2 or 14–29–6, supra, require that the payment be made personally. Baca v. Village of Belen, supra.

In Asplund v. Alarid, 29 N.M. 129, 219 P. 786 (1923), the question was whether the 1921 amendment authorizing the soldiers' exemption was in conflict with N.M. Const. art. IV, § 32, which prohibited the extinguishment of any obligation to the State "except by payment thereof into the proper treasury." We held that the exemption amendment modified the original constitutional provision. The same amendment would also modify the provisions of art. IX, § 12, supra. In Asplund, we said:

"* * * [B]ut the amendment is the later expression of the people's will, and must take precedence over the earlier section, in so far as they are in conflict, and we must give to the term under consideration its usual meaning as above defined—the meaning which the people of the state must have had in mind in modifying their fundamental law to the end that, through their Legislature, they might give some substantial recognition of the service and sacrifice of those of their citizens who, in the time of danger, bravely risked life and limb in support of our free institutions." (29 N.M. at 134, 219 P. at 788.)

We conclude that without consideration of the constitutionality of the voting requirements of either art. IX, § 12, supra, or the statutes implementing it the Wagoners, by virtue of claiming the soldiers' exemption, became taxpayers within the requirements of the Constitution and these statutes, and that the trial court was correct in so concluding.

Having found the other issues in favor of the appellee, the judgment is affirmed.

It is so ordered.

COMPTON, C. J., and TACKETT, J., concur.