890 P.2d 808

Robert H. BOLTON and Meribelle L. Bolton, Plaintiffs–Appellants and Cross–Appellees,

v.

The BOARD OF COUNTY COMMISSIONERS OF VALENCIA COUNTY, Defendant, Cross–Defendant and Third–Party Plaintiff–Appellee.

GELCO FINANCIAL CORPORATION, now known as GE Capital Public Finance, Inc., Defendant, Cross–Claimant and Third–Party Plaintiff-Appellee and Cross–Appellant,

v.

COMPTON, HICKEY & IVES, P.A. and James C. Compton, Individually, Esquibel, Sanchez & Griego, P.C., and Thomas C. Esquibel, Third–Party Defendants–Appellees, and Cross–Appellants,

Alden Capital Markets, Inc., and Leo V. Valdez, Third–Party Defendants–Appellees,

Attorney General of the State of New Mexico, Intervenor–Appellee.

No. 15635.

Court of Appeals of New Mexico.

Dec. 15, 1994.

 

Victor R. Marshall, Alexis H. Johnson, Victor R. Marshall & Associates, P.C., Albuquerque, Anthony J. Williams, Kevin Sweazea, Los Lunas, for plaintiffs-appellants and cross-appellees Robert H. Bolton and Meribelle L. Bolton.

Mike Runnels, Dist. Atty., Los Lunas, Earl R. Norris, Oldaker, Oldaker & Norris, P.A., Albuquerque, for defendant, cross-defendant and third-party plaintiff-appellee, Bd. of Com'rs of Valencia County.

Allen C. Dewey, Jr., Arthur D. Melendres, George R. McFall, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Robert J. Desiderio, Albuquerque, for defendant, cross-claimant and third-party plaintiff-appellee and cross-appellant GE Capital Public Finance, Inc.

Paul Bardacke, Kerry Kiernan, Peter S. Kierst, Eaves, Bardacke & Baugh, P.A., Albuquerque, for third-party defendants-appellees, and cross-appellants Compton, Hickey & Ives, P.A. and James C. Compton.

Henry M. Bohnhoff, Thomas L. Stahl, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for third-party defendants-appellees, and cross-appellants Esquibel, Sanchez & Griego P.C., and Thomas C. Esquibel.

William F. Davis, William F. Davis & Assoc., P.C., Albuquerque, for third-party defendants-appellees Alden Capital Markets, Inc. and Leo V. Valdez.

Tom Udall, Atty. Gen., Andrea R. Buzzard, Joel Cruz–Esparza, Asst. Attys. Gen., Santa Fe, for intervenor-appellee.

*OPINION*

DONNELLY, Judge.

Plaintiffs, Robert H. Bolton and Meribelle L. Bolton (the Boltons), appeal from a judgment denying in part their suit to invalidate the June 1990 $1.8 million dollar bond issue approved by Valencia County (the County). Defendant, GE Capital Finance, Inc. (GE), and third-party Defendants, Compton, Hickey & Ives, P.A. (the Compton Firm), James C. Compton, individually, Esquibel, Sanchez & Griego, P.C. (the Esquibel Firm), and Thomas C. Esquibel, individually, have filed separate cross-appeals.

The Boltons raise numerous issues on appeal which we combine and discuss as follows: (1) whether the district court violated due process by limiting their requests for discovery, granting summary judgment without full discovery, bifurcating trial of the issues, denying their motion to file an amended complaint, and refusing to consider documentary evidence in response to a motion for summary judgment; and (2) whether the district court erred in refusing to invalidate the entire bond issue.

GE's cross-appeal asserts that the district court erred in (1) invalidating a portion of the bond issue for refinancing road building equipment; and (2) not holding that GE was entitled to payment of the bonds it purchased.

Third-party Defendants and Cross–Appellants, the Compton Firm, the Esquibel Firm, and Compton and Esquibel, individually, contend in their cross-appeal that the district court erred in (1) invalidating a portion of the bond issue for refinancing road building equipment; (2) refusing to find that the Boltons' challenge to the validity of the refinancing aspect of the bond issue was time barred; (3) refusing to find that under NMSA 1978, Section 55-8-202 (Repl.Pamp.1987), GE was a good-faith purchaser for value without notice of any bond defect in the event that refinancing of road construction equipment was unauthorized under the 1990 bond issue; and (4) refusing to find that no amount was refinanced.

We affirm in part and reverse in part.

*FACTS*

In May 1990 the County, through its board of county commissioners, adopted an ordinance to authorize the issuance of a $1.8 million dollar revenue bond issue. In order to facilitate the issuance of the bond issue, the County hired Compton as its bond counsel. The County also relied upon Esquibel, the county attorney, for advice concerning the issuance and sale of the bonds. On the advice of Compton, the County executed a Trust Indenture and Security Agreement (Trust Indenture) between the County and Ranchers State Bank, as Trustee. The Trust Indenture specified that the bonds issued thereunder were payable only from properly pledged revenues. No voter approval was sought for the issuance of the bonds. The Trust Indenture specifically pledged as sources for the repayment of such bonds monies from thirteen specific sources, together with:

> (B) All other income, proceeds and revenues received by the County, except: (1) the proceeds of ad valorem taxes; (2) State of New Mexico appropriations; and (3) the proceeds of any County contracts or grants, whether from or with public, private or governmental sources, which are restricted as to use.

The Trust Indenture further provided:

> If the pledge of any one or more sources of income or revenue to the payment of the Bonds shall ever be held by final decision of a court of competent jurisdiction to be invalid or to make the Bonds invalid because of constitutional restrictions on County indebtedness, the income or revenue derived from such source or sources shall not be subject to the pledge herein contained.

As outlined in the ordinance authorizing the bond issue, the bonds were issued for the purposes of:

> [ACQUIRING] AND FINANCING ... EQUIPMENT, VEHICLES AND OTHER PERSONAL PROPERTY FOR LAYING OFF, OPENING, CONSTRUCTING, RECONSTRUCTING, RESURFACING, MAINTAINING, REPAIRING, AND OTHERWISE IMPROVING ALLEYS, STREETS, PUBLIC ROADS AND BRIDGES WITHIN [THE] COUNTY....

The bond ordinance did not specifically list any other purposes but did refer to the Trust Indenture which defined "Purposes" to include:

> (A) Constructing, purchasing, furnishing, equipping, rehabilitating, making additions and improvements to public buildings;

> (B) Laying off, opening, constructing, reconstructing, resurfacing, maintaining, repairing or otherwise improving existing building [sic], alleys, streets and public roads and bridges within the County;

> (C) Acquiring, financing and refinancing equipment, vehicles and other personal property for such purposes; and

> (D) All purposes incidental to and necessary and appropriate for the foregoing.

Compton, the County's bond counsel, issued an opinion letter to Alden Capital Markets, Inc. (Alden) stating that the bonds were valid obligations of the County. Esquibel also gave a similar opinion letter.

The County issued the bonds on June 14, 1990. Following the issuance of the bonds by the County, they were purchased by Alden, who acted as the bond underwriter. Thereafter, Alden resold the bonds to GE. Alden and its president, Leo V. Valdez, prepared the offering circular in connection with Alden's offer to sell the bonds to GE. After the County issued the bonds and had spent a portion of the bond proceeds, its bond counsel, Compton, advised it to pass a supplemental bond ordinance. The supplemental ordinance had the effect of broadening the purposes of the bond issue, thereby authorizing the County:

> [TO PROVIDE] FOR THE CONSTRUCTING, PURCHASING, FURNISHING, EQUIPPING, REHABILITATING AND MAKING ADDITIONS AND IMPROVEMENTS TO PUBLIC BUILDINGS AND FOR THE LAYOFF, OPENING, CONSTRUCTING, RECONSTRUCTING, RESURFACING, MAINTAINING, REPAIRING AND OTHERWISE IMPROVING EXISTING PUBLIC

BUILDINGS, ALLEYS, STREETS, PUBLIC ROADS AND BRIDGES WITHIN VALENCIA COUNTY....

On June 29, 1991, approximately twelve months following the issuance of the bonds, the Boltons filed suit against the County and GE for declaratory judgment, injunction, and equitable relief. They sought a ruling that the bond issue required advance voter approval, that the bonds were issued in violation of state constitutional and statutory provisions, and that the bond issue was void and unenforceable. The Boltons also requested that the court enjoin the County from repaying the bond issue. GE cross-claimed against the County and filed third-party complaints against Alden, Valdez, the Compton Firm, the Esquibel Firm, and Compton and Esquibel, individually, asking reimbursement for any portion of the bond indebtedness which the district court determined to be unenforceable. The County's answer to the cross-claim of GE denied the invalidity of the bond issue and asserted a counterclaim for a declaratory judgment confirming the validity of the bond issue. Thereafter, the County filed a third-party complaint for indemnification against the Compton Firm, and Compton, individually, and a third-party complaint against Alden and Valdez, individually. The Esquibel Firm, Esquibel, individually, and Alden also cross-claimed against the Compton Firm, and Compton, individually.

In November 1991 the Attorney General moved to intervene in the action. The district court granted the motion. The County filed a motion to dismiss the Boltons' complaint. GE filed a motion for summary judgment. GE also filed a second motion for summary judgment seeking to have the district court determine that it was a subsequent purchaser of the bonds, without notice of any defect as to the validity of the bonds. GE, the Compton Firm, Compton, individually, the Esquibel Firm, and Esquibel, individually, filed motions for summary judgment seeking to have the district court determine that the amount of the bond issue found to be not statutorily authorized, i.e., that portion devoted to refinancing, totaled $412,182. The district court granted summary judgment upholding the bond issue, but invalidat-

ed a portion of the bond issue in the amount of $412,182.

In its letter to counsel following the hearing on the motions for summary judgment, the district court stated, in part:

> [T]he indenture seeks to pledge not only some 13 sources of county revenue including ... the Small Counties Assistance Fund, business licenses revenues and the county equalization distribution, but also "all other income, proceeds and revenues received by the County...." with three exceptions. In fact, it would appear that the only resource not pledged is *ad valorem* taxes.... [I]n my view, the indenture creates a "debt" within the meaning of the [state] Constitution which requires voter approval.

The district court also stated that although it found the Trust Indenture improperly pledged certain county revenues to the repayment of the bonds, the Trust Indenture was severable so that the unauthorized revenues could be severed from the bond issue, thereby validating the remainder of the bond issue. The district court found that there should be severed from the pledged revenue those revenues not specifically set forth in NMSA 1978, Section 3–31–1 (Repl. Pamp.1991), or made applicable to counties under NMSA 1978, Section 4–62–1 (Repl. Pamp.1984), so all that remains are "sales [tax revenue] (gross receipts) tax revenue and gasoline tax revenue." Additionally, the district court stated:

> I find the requirement ... of the indenture and quoted below to be constitutionally proscribed and severable:
>
> "... [T]he County covenants and agrees that as long as the Bonds are Outstanding, it will cooperate with the Trustee as a revenue undertaking to cause the Pledged Revenues on an annual basis to be continuously and sufficiently available in amounts at least equal to one hundred twenty percent (120%) of the annual debt service on the Bonds."

The district court further held that "the purposes which are not identical to those set forth in Section 3–31–1(C) and (E) will also be severed. I find these to be 'furnishing and equipping' public buildings ... [and]

'[a]cquiring, financing, and refinancing equipment, vehicles and other personal property for such purposes'. . . . Thus, that purpose, too, will be severed."

Although the district court found that certain of the revenue sources pledged by the Trust Indenture violated Article IX, Section 10 of the New Mexico Constitution prohibiting a pledge of general revenues without voter approval, the court concluded this defect could be cured because the Trust Indenture contained several severability clauses. Relying in part upon these severability provisions, the district court ordered that all of the pledged revenues be severed, with the exception of the revenues derived from the County's portion of the gross receipts and gasoline tax revenues. The court also found that one of the purposes of the bond issue, i.e., the "refinancing of equipment, vehicles and personal property," was invalid.

The district court held that the portion of the bonds issued to refinance equipment, vehicles, and other personal property was $412,182, that that portion of the bond issue was void *ab initio*, and that the County had no authority to pay back this portion of the principal or the interest thereon. The amount of $412,182 was listed in the County's bond offering circular for refinancing road equipment. This amount was expended by the County from the bond proceeds to purchase road and construction equipment that it was buying under five lease-purchase agreements. Based on the above rulings, the district court granted Defendants' motions for summary judgment. The court treated the County's motion to dismiss as a motion for summary judgment and granted the motion in part.

## I. *CLAIM OF DENIAL OF DUE PROCESS*

■ The Boltons argue that they were denied procedural due process by the district court's rulings limiting their right of discovery, granting summary judgment without full discovery, bifurcating the issues raised by the contingent derivative claims, precluding them from participating in the second phase of the trial, denying their right to file an amended complaint, and refusing to consider documentary evidence submitted by them in response to the motions for summary judgment. However, a review of the substantive allegations made below as well as a review of the procedural facts shows that the Boltons' procedural claims are without merit.

As stated earlier, the Boltons' complaint sought to invalidate the bond issue and enjoin payment of the bonds. The County and GE took the positions that the constitutional validity of the bond issue was an issue of law apparent from the transcript of the bond proceeding, that the statutory validity of the bond issue was time barred as a matter of law, and that the Boltons' claims concerning their need for discovery in order to determine where the proceeds of the bonds went was irrelevant to a proceeding to determine the validity of the bonds themselves. The district court agreed with the positions of the County and GE and bifurcated trial of the Boltons' challenges concerning the validity of the bond issue from the claims against the attorneys. The district court reasoned that if the bond issue was valid, the claims against the attorneys would be moot; if the bond issue was invalid in whole or in part, the claims against the attorneys and the issue of whether GE was a good-faith purchaser would then have to be decided.

■ The Boltons' complaint was filed on June 29, 1991. On June 3, 1992, the Boltons filed an affidavit under SCRA 1986, 1–056(F) (Repl.1992), claiming they needed additional time for discovery prior to the summary judgment hearing. The summary judgment hearing was on the constitutional and statutory validity of the bond issue. The Boltons' request was denied by the district court, and the Boltons attack the propriety of this ruling. We agree with the district court that the Boltons' requested discovery was irrelevant to the purpose of the summary judgment hearing. Although they contend that discovery might have revealed a myriad of improprieties in the application of the proceeds of the bonds, a bond issue will not be invalidated because of misuse of bond proceeds, as long as the bonds were issued for a valid purpose. *Johns–Manville Corp. v. Village of Dekalb*, 439 F.2d 656, 660 n. 5 (8th Cir.1971).

Moreover, the Boltons' request for additional discovery was filed after the district court's order dated January 30, 1992, which specified that the deadline for completion of discovery was April 3, 1992. The order also specified that any conflicts regarding discovery were to have been brought to the district court's attention by April 3, 1992. The Boltons claim that they could not engage in discovery before the deadline because new parties (Esquibel, his firm, and Alden) had just been brought into the lawsuit and thus it would have been a waste of time to engage in discovery without all parties present. However, the Boltons did not alert the district court to this problem, if it indeed was a problem, by April 3. Consequently, we find no error in the district court's denial of this request, since the Boltons waited until well beyond the April 3 deadline to seek additional discovery.

After the district court entered its order granting in part the motions of GE and the Compton and Esquibel Firms for summary judgment, each of the Defendants, except the County, moved for a protective order. On January 6, 1993, the district court entered an order limiting discovery to matters involving whether GE had notice of any defect in the issuance of the 1990 county revenue bonds, any issues relevant to the enforceability of the portion of the bond issue that was invalidated, the Boltons' claim of conspiracy, fraud, or concealment, and to matters relating to the discovery of admissible evidence bearing on the foregoing issues. Considering the fact that the district court had granted motions for summary judgment on the issue of the validity of the bonds, thereby considerably narrowing the issues remaining in the case, under the record before us we see no abuse of discretion in the district court's placement of reasonable limitations on the Boltons' motions for discovery. See DeTevis v. Aragon, 104 N.M. 793, 797–98, 727 P.2d 558, 562–63 (Ct.App.1986) (trial court's order is subject to reversal only upon showing of abuse of discretion). Moreover, inasmuch as most of the information the Boltons sought to discover was directed to the misapplication of the bond proceeds, an issue irrelevant to their lawsuit, the Boltons were not prejudiced by the limitations imposed.

■ The Boltons also argue that the district court erred in ordering separate trials on their complaint and the third-party or cross-claims. We find this argument unpersuasive. The district court, for purposes of convenience, avoiding prejudice, or for the purpose of expediting the trial of the issues or in the interests of judicial economy, may direct that specific issues be tried separately. SCRA 1986, 1–042(B) (Repl.1992); see also Mendenhall v. Vandeventer, 61 N.M. 277, 279, 299 P.2d 457, 458 (1956) (bifurcation of issues is appropriate if resolution of particular issue may expedite or end the litigation). The decision as to whether to bifurcate the trial of certain claims is entrusted to the sound discretion of the court. McCrary v. Bill McCarty Constr. Co., 92 N.M. 552, 554, 591 P.2d 683, 685 (Ct.App.1979). Considering the number and complexity of the issues raised by the parties, the district court did not abuse its discretion in ordering a separate trial on certain of the issues. In particular, we find no abuse of discretion for the district court to try the validity of the bond issue before any determination of the complex issues concerning the allegations of attorney malpractice, to determine the validity of the bonds before any hearing on the issue of whether the bond purchaser had notice of any defects.

■ On March 5, 1993, almost two years after the County answered their initial complaint, the Boltons also sought to file an amended complaint. The district court denied the motion. The district court had previously entered a scheduling order, and the case had been scheduled for trial. Moreover, the Boltons' attempted amendment came after the district court had granted several motions for summary judgment. The proposed amended complaint was filed by Plaintiffs as citizens and taxpayers and sought declaratory and injunctive relief, as well as damages for alleged tort and criminal violations of Alden, Compton, and Esquibel purportedly committed against the County. In view of the matters sought to be raised in the amended complaint, the timing of the filing of such motion, and the fact that the district court had previously entered an order setting

deadlines for discovery, bifurcating the trial of issues, granting partial summary judgment, and fixing a trial date, we find no error in the district court's denial of the motion. *See Newman v. Basin Motor Co.*, 98 N.M. 39, 43, 644 P.2d 553, 557 (Ct.App.1982) (denial of motion to amend will be reversed only upon showing of an abuse of discretion); *see also Slide–A–Ride of Las Cruces, Inc. v. Citizens Bank of Las Cruces*, 105 N.M. 433, 436–37, 733 P.2d 1316, 1319–20 (1987) (upholding denial of motion to amend where additional claims were sought to be raised on eve of close of discovery, some twenty months after complaint filed).

■ The Boltons also argue that the district court erroneously refused to consider documentary evidence which they submitted in response to the motions to dismiss and motion for summary judgment. This is a facet of the Boltons' other argument that summary judgment was improperly granted because there were genuine issues of material fact supported by their tendered documentary evidence. The district court's order expressly stated that the "factual material submitted by Plaintiffs ... on August 5, 1992 will not be considered by the Court inasmuch as it was submitted outside the time limits provided by the rules." Thus, we find no error in the district court's refusal to consider this additional material. The court did consider the voluminous briefs and materials submitted by the Boltons in their initial response to the motions, together with two additional briefs filed by them. As noted by GE, the material which the district court refused to consider was not filed until the last day for filing briefs and at a time when Defendants had no further opportunity to respond to the materials filed. Moreover, the Boltons have failed to specifically show how this additional material differed from the matters previously submitted by them and which were considered by the court. Under these circumstances the Boltons have failed to show any abuse of the district court's discretion or how they were prejudiced by the ruling of the court. *Cf. Behrmann v. Phototron Corp.*, 110 N.M. 323, 327, 795 P.2d 1015, 1019 (1990) (reviewing court will reverse trial court's ruling admitting or excluding evidence only when it is clear that trial court has abused its discretion).

## II. *VALIDITY OF BOND ISSUE*

The Boltons make a multifaceted attack on the validity of the bonds. Included in their attack are constitutional challenges and statutory challenges. The district court ruled that the statute of limitations operated to bar all but the constitutional challenges. The district court upheld the validity of the bonds except for a portion thereof, in the amount of $412,182, which was found to be for a statutorily impermissible purpose. Although statutory challenges were held barred by the statute of limitations, the district court, in upholding most of the bonds under the special fund doctrine, ruled that the existence of a statutorily authorized special fund was necessary to the special fund doctrine. In considering this ruling, we will review the case as postured by the district court. We first state the parties' contentions and then discuss the constitutional challenges, the purposes of the bonds, and the applicability of the statute of limitations.

The Boltons' appeal and the cross-appeals of each of the Cross–Appellants focus on the issue of whether the district court properly upheld the validity of the bond issue except for that portion of the bond proceeds ($412,-182) utilized for refinancing the purchase of road equipment, vehicles, and other personal property. The Boltons argue the district court erred in refusing to declare that the entire bond issue contravened the provisions of Article IX, Section 10 of the New Mexico Constitution. Specifically, the Boltons argue that the entire bond issue is invalid because the bonds were issued without first obtaining voter approval, that the bonds were issued for unauthorized purposes, and that the bond issue purported to authorize the County to pledge the payments of general tax revenues for repayment of the bonds rather than restricting payment of the bonds from special funds. The Boltons contend that the district court erred in refusing to invalidate the entire bond issue because repayment of the bonds was not limited to revenues derived from a special fund or funds, but instead

pledged county revenues from diverse county funding sources, including county gross receipts taxes, county and local road funds, gasoline and special fuels taxes, motor vehicle excise taxes, small county assistance fund, county equalization distribution, building permits, licenses and fees, business licenses, school bus route reimbursements, and the motor vehicle road tax. In addition to Article IX, Section 10, the Boltons contend that various other provisions of the constitution were violated, and that such violations served to invalidate the entire bond issue.

The County disagrees with the Boltons that the entire bond issue was invalid, but concurs with the district court's finding that a portion of the revenue bonds was issued for an unauthorized purpose. The County also agrees with the district court's order which granted GE's motion for summary judgment determining that $412,182 was the amount of the invalid portion of the bonds. Responding to the Boltons' appeal, GE asserts that the district court erred in concluding that the amount of bonds issued for the purpose of "refinancing equipment, vehicles and other personal property" was outside the purview of Section 3–31–1 and, hence, was an unauthorized purpose. GE concedes, however, that if a portion of the bond issue was invalid, there was no genuine issue of material fact as to the amount of bonds issued for the purpose of refinancing equipment. Similarly, the Compton and Esquibel Firms, and Compton and Esquibel, individually, argue in their cross-appeal that the district court properly rejected the Boltons' constitutional challenges because the indebtedness came within the special fund exception to Article IX, Section 10 of the New Mexico Constitution.

### (A) Constitutional Challenges of the Boltons

Neither the County nor Cross–Appellants challenge the district court's invalidation and severance of the several general funding sources from the revenue bond issue. However, Cross–Appellants argue that the district court erred in finding that the "special fund doctrine" requires that a statutorily available "special fund" may only be expend-

ed for "statutorily approved purposes." We address these contentions only to the extent necessary to our disposition.

We first consider the contentions of the parties as to whether the County's 1990 bond issue constituted an indebtedness within the contemplation of Article IX, Section 10 of the state constitution so as to require voter approval. Article IX, Section 10, as it existed at the time of the issuance of the bonds, provided in applicable part:

No county shall borrow money except for the following purposes:

A. erecting, remodeling, and making additions to necessary public buildings;

B. constructing or repairing public roads and bridges;

C. constructing or acquiring a system for supplying water, including the acquisition of water and water rights, necessary real estate or rights-of-way and easements;

D. constructing or acquiring a sewer system, including the necessary real estate or rights-of-way and easements;

E. constructing an airport or sanitary landfill, including the necessary real estate; or

F. the purchase of books and other library resources for libraries in the county.

In such cases, indebtedness shall be incurred only after the proposition to create such debt has been submitted to the registered voters of the county and approved by a majority of those voting thereon.

In addressing this issue, we find the following instructive:

Although the cases are not entirely in accord and dissenting opinions have been frequent, it has generally been held that an obligation payable from a special fund created by the imposition of fees, penalties, or excise taxes, and for the payment of which the general credit of the state is not pledged and resort may not be had to property taxation, is not a debt within the meaning of constitutional debt limitations.

72 Am.Jur.2d *States, Territories, and Dependencies* § 82 (1974). *See generally* Annotation, *Obligation Payable From Special Fund*

*Created by Imposition of Fees, Penalties, or Excise Taxes as a "Debt" Within Constitutional Debt Limitation,* 100 A.L.R. 900 (1936).

■ The Boltons claim New Mexico disfavors public debt without voter approval and that the special fund doctrine should therefore be narrowly applied. We think this argument misperceives the rationale of our Supreme Court in *State ex rel. Capitol Addition Building Commission v. Connelly,* 39 N.M. 312, 318, 46 P.2d 1097, 1100–01 (1935). In *Connelly* our Supreme Court construed the word "debt" as used in Article IX, Section 12 of the state constitution as "comprehending a debt pledging for its repayment the general faith and credit of the state or municipality, . . . and contemplating the levy of *a general property tax* as the source of funds with which to retire [such indebtedness]." *Id.* (emphasis added). Similarly, as observed in *Seward v. Bowers,* 37 N.M. 385, 386, 24 P.2d 253, 253 (1933):

> The idea of a "debt" in the constitutional sense is that an obligation has arisen out of contract, express or implied, which entitles the creditor unconditionally to receive from the debtor a sum of money, which the debtor is under a legal, equitable, or moral duty to pay without regard to any future contingency.

In *State Office Building Commission v. Trujillo,* 46 N.M. 29, 46, 120 P.2d 434, 444 (1941), our Supreme Court noted that in order for "an obligation to come under the special fund doctrine, the creation of the obligation and the law authorizing it must specify and set out the sources for payment thereof and thereby disclose that no part of the payment is to be obtained from general taxation." Accordingly, we hold that the limitation contained in Article IX, Section 10 of the New Mexico Constitution, prohibiting a county from incurring an indebtedness without first submitting the question of the indebtedness to a vote of the electorate, does not apply where the obligation is payable solely from a special fund or funds and the county has not pledged its general full faith and credit. *See McKinley v. Alamogordo Mun. Sch. Dist. Auth.,* 81 N.M. 196, 201, 465 P.2d 79, 84 (1969); *Connelly,* 39 N.M. at 318, 46 P.2d at

1100; *Seward,* 37 N.M. at 385–86, 24 P.2d at 253; *see also Village of Deming v. Hosdreg Co.,* 62 N.M. 18, 26, 303 P.2d 920, 925 (1956) (revenue bonds which do not engage the general taxing power of the state or a political subdivision do not require approval by popular referendum).

■ Included in the several constitutional challenges raised by the Boltons is their claim that the district court erred in not declaring the bond issue invalid because the bond issue violated Article IX, Section 10 of the New Mexico Constitution and because issuing bonds for the purpose of making building repairs is not authorized by the constitution and such purpose was not included in the County's initial bond ordinance. The Boltons contend that attempts to amend Article IX, Section 10 in 1992 and 1994 to authorize incurring indebtedness for making repairs to county buildings was twice rejected by the electorate; thus, the bond issue embraced an unlawful purpose. We think this argument must fail because it misinterprets the underlying purpose of Article IX, Section 10. This provision prohibits a county from incurring indebtedness, except for the purposes enumerated therein. The restrictions on the borrowing of money or incurring "indebtedness" contained in Article IX, Section 10 are debt limitations where the county unconditionally pledges to repay the obligation. The constitutional restrictions enumerated in Article IX, Section 10, do not apply where the obligation is payable out of a special fund. *Seward,* 37 N.M. at 385–86, 24 P.2d at 253; *see also Allstate Leasing Corp. v. Board of County Comm'rs, Rio Arriba County, N.M.,* 450 F.2d 26, 29–30 (10th Cir. 1971). Nor do we believe the County's use of revenue bond monies derived from a special fund for the purpose of repairing public buildings to be improper, where, as here, such purpose was expressly stated in the supplemental bond ordinance.

■ The Boltons additionally argue that because the district court found that payment of the bond issue was not restricted to payment from special funds, the entire bond issue was invalid and the district court erred in finding that the portion of the offending provisions could be severed, thereby render-

ing the remainder of the bond issue valid. They contend that the bond issue transaction was functionally equivalent to a pledge of full faith and credit, and that the bond obligation illegally impacted the County's general revenue funds and "powers of taxation" because of the number and types of revenues pledged.

The district court struck down the pledges of revenue sources which it found to implicate the full faith and credit of the county. The district court, relying upon severability clauses contained in the Trust Indenture, ordered that certain revenue sources be severed from the remainder of the bond provisions. *See City of Santa Fe v. First Nat'l Bank*, 41 N.M. 130, 139, 65 P.2d 857, 862–63 (1937) (recognizing severability of portion of bond issue where other provisions of agreement are valid and enforceable). We think Judge Smith properly determined that by limiting the repayment of the bonds to receipts from gross receipts and gasoline tax revenues, the bonds were repayable solely out of special funds and thus they did not pledge the full faith and credit of the county. *See id.* Under such posture, the district court correctly declined to invalidate the entire bond issue.

█ The Boltons also contend that the district court erred in allowing the gross receipts and the gasoline tax pledge to stand. They argue that under *McKinley*, the County cannot constitutionally encumber revenues that it receives from the state from gross receipts taxes or gasoline taxes, without first obtaining voter approval. While some courts in other jurisdictions have applied the rule urged by the Boltons, *e.g. Dykes v. Northern Va. Transp. Dist. Comm'n*, 242 Va. 357, 411 S.E.2d 1, 4–5 (1991), *certs. denied*, 504 U.S. 941, 942, 112 S.Ct. 2275, 2277, 119 L.Ed.2d 201, 203 (1992), decisions of our Supreme Court rest on a different rationale. *Connelly* held that a constitutional debt limitation applies to obligations that are met through property taxes only, not excise taxes. 39 N.M. at 327–28, 46 P.2d at 1106. Moreover, our legislature has narrowed the application of *Connelly* by its adoption of Section 3–31–1 which limits the use of excise taxes only to those purposes authorized by statute.

Furthermore, we think the present case is distinguishable from *McKinley*. Here, unlike the situation in *McKinley*, the district court's order directing the severance of all funding sources for payment of the bonds, except for gross receipts and gasoline tax revenue, resulted in a limitation that the bonds be paid only from the two special funds recognized by the court and eliminated any provision arguably authorizing payment from general fund sources. By statute, the legislature has expressly authorized the use of such funds for the issuance of revenue bonds. *See* §§ 3–31–1; 4–62–1; *cf. San Juan Water Comm'n v. Taxpayers & Water Users*, 116 N.M. 106, 111, 860 P.2d 748, 753 (1993) (upholding right of county to fund acquisition of water rights with a special fund obtained from ad valorem taxes); *Stone v. City of Hobbs*, 54 N.M. 237, 240–41, 220 P.2d 704, 706–07 (1950) (the city's application of proceeds from gasoline and motor fuel tax to special street improvement fund held not to constitute "debt" in constitutional sense); *see also Switzer v. City of Phoenix*, 86 Ariz. 121, 341 P.2d 427, 428–29 (1959). Additionally, the Trust Indenture expressly provided that "[t]he Bonds and all payments by the County hereunder are not general obligations of the County, and shall never constitute its indebtedness, but are the limited, special obligations of the County payable solely from revenues, proceeds and receipts derived from the Pledged Revenues as provided herein." Thus, we conclude that the district court correctly determined that revenues derived from the County's share of the gross receipts and gasoline taxes came within the special fund doctrine.

█ The Boltons further assert that the 1982 amendment to Article IX, Section 10 of the state constitution, which deleted the requirement that qualified voters in a bond election must be property owners, indicated an intent that all registered voters in the county be permitted to vote on all bond issues, including revenue bond issues. The Boltons claim this intent is further supported by the legislature's use of the word "borrow" in Article IX, Section 10, which they claim encompasses borrowing through revenue bonds. We find this argument unpersuasive.

Our examination of the amendment indicates an intent on the part of the legislature and electorate to bring this section of our state constitution into conformity with the provisions of the holding of the United States Supreme Court in *City of Phoenix v. Kolodziejski*, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970), so that all properly qualified voters within a county are permitted to vote upon questions involving the issuance of *general obligation bonds. See Hair v. Motto*, 82 N.M. 226, 227, 478 P.2d 554, 555 (1970); *Board of Educ. v. Maloney*, 82 N.M. 167, 169, 477 P.2d 605, 607 (1970). We discern nothing in the language of the amendment which implies an intent to require voter approval of *revenue bond* issues prior to their issuance.

■ The Boltons next contend that Section 4–62–1 and NMSA 1978, Section 4–62–2 (Repl.Pamp.1984) authorizing the issuance of county revenue bonds, in effect at the time of the bond issue, violated Article IV, Section 18 of the New Mexico Constitution because they extended the provisions concerning municipal revenue bond statutes by reference to title only. Former Section 4–62–2 provided that bonds authorized to be issued under Section 4–62–1 "shall be issued in accordance with the terms of Sections 3–31–1 through 3–31–12 NMSA 1978, as the same may from time to time be amended, except that no county shall issue revenue bonds pledging revenues the county does not collect or receive." Section 4–62–1 contained the substantive authority for certain named types of revenue bonds. We do not interpret the challenged language as violating our state constitution. Scrutiny of the language in question indicates a legislative intent to specify that the procedure for the issuance of county revenue bonds should be consistent with the *procedural* requirements prescribed by NMSA 1978, Sections 3–31–1 to –12 (Repl.Pamp.1991), for the issuance of municipal revenue bonds. *See Daniels v. Watson*, 75 N.M. 661, 669, 410 P.2d 193, 198 (1966) (provisions of Article IV, Section 18 of the New Mexico Constitution condemns adoption of substantive law by reference; the rule is different, however, where reference is to procedural matters); *see also Ballew v. Denson*, 63 N.M. 370, 372, 320 P.2d 382, 383 (1958) (no constitutional impediment

to adoption of procedural law by reference); *Tondre v. Garcia*, 45 N.M. 433, 439–41, 116 P.2d 584, 587–88 (1941) (statute extending the *procedures* for collecting an assessment does not violate the constitutional proscription against the extension of *substantive* law by reference to title only).

■ Finally, the Boltons contend that the district court has validated an illegal public debt in violation of Article IV, Section 25 of the state constitution. We disagree. We find nothing in the record to indicate that the district court construed the various statutes and ordinances in a manner violative of Article IV, Section 25.

### (B) *Challenges to Bond Purposes*

■ Both the Boltons and the County agree that the district court correctly decided that the bonds were partially void. GE, the Compton and Esquibel Firms, and Compton and Esquibel, individually (Cross–Appellants), however, contend that the district court erred in holding that the County was without statutory authority to utilize revenues derived from gasoline and gross receipts taxes for the purpose of "[a]cquiring, financing and refinancing [of] equipment, vehicles and other personal property."

In challenging the district court's ruling invalidating a portion of the bond issue, Cross–Appellants argue that Section 3–31–1(C)(5) authorized the issuance of gross receipts tax revenue bonds for "reconstructing, resurfacing, maintaining, repairing or otherwise improving existing alleys, streets, roads or bridges," and that gasoline tax revenue bonds were authorized under Section 3–31–1(E) for "laying off, opening, constructing, reconstructing, resurfacing, maintaining … alleys, streets, public roads and bridges or any combination [thereof]." Cross–Appellants also point out that the Trust Indenture specifically provided that the bonds were issued for the purpose of "[a]cquiring, financing and refinancing [of] equipment, vehicles and other personal property."

The district court, although holding that the County was authorized to purchase and finance equipment for any of the purposes delineated in Section 3–31–1(E), held that the

use of bond proceeds for "refinancing" equipment was not authorized by statute and was, therefore, unconstitutional. The district court found that although Section 3–31–1(C) necessarily implied the authority to issue gross receipts tax revenue bonds to acquire equipment, vehicles, and other personal property to construct, maintain, and repair roads, the legislature did not authorize counties to refinance existing lease-purchase contracts incurred in acquiring such equipment. In reaching this conclusion the district court looked in part to the provisions of Section 3–31–8(A). The district court also concluded that the expenditure of bond proceeds for the refinancing of equipment was not expressly authorized under Section 3–31–1 and that the County had not sought to implement the provisions of Section 3–31–8(A), which permitted the issuance of "refunding revenue bonds *for the purpose of refinancing, paying and discharging all or any part of such outstanding bonds....*" (Emphasis added.) We do not read the provisions of Section 3–31–8(A) to preclude a county from utilizing a portion of revenue bond proceeds to refinance road building equipment, which the County had previously contracted to acquire under lease-purchase agreements.

The authorization contained in Section 3–31–8 permitting the County to refinance prior indebtedness refers to the refinancing or refunding of one or more outstanding bond issues. Nothing in such statute restricts the authority of a county from utilizing the proceeds of a revenue bond issue to refinance the acquisition of road building equipment or vehicles in order to carry out and effectuate the purposes of the 1990 revenue bond issue. Since Section 3–31–8 was intended to govern the procedure for refunding prior bond issues, it imposes no restriction upon the use of proceeds from an original bond issue.

The term "financing" embraces the raising of money for the acquisition of property or to pay off existing indebtedness. "Refinance" means "[t]o finance again or anew; to pay off existing debts with funds secured from new debt." Black's Law Dictionary 1281 (6th ed. 1990). We think the County's act of refinancing the purchase of road building equipment, vehicles, and personal property prop-erly falls within the ambit of its express power to issue revenue bonds to maintain and repair roads. Cross–Appellants argue that a county cannot maintain and repair roads without possessing the corresponding authority to purchase and acquire equipment to carry out this function and that such power implicitly arises from the County's power to maintain and build roads. We agree. The provisions of Section 3–31–8 relate to the issuance of revenue refunding bonds; hence, we discern no legislative intent in the enactment of this statute to indicate that such statute was meant to preclude a municipality or county from issuing revenue bonds and utilize the proceeds to pay off or refinance prior equipment purchase agreements involving equipment utilized for the purposes set out in Section 3–31–1(E). Neither do we find any constitutional or statutory impediment to use of county revenue bonds funded by gasoline tax or gross receipts tax revenues for refinancing the purchase of road building equipment or vehicles which have previously been leased where there were no outstanding revenue bonds issued by the County that were being discharged with the proceeds.

■ The authority to issue revenue bonds for the purpose of constructing, repairing, and maintaining county roads and streets necessarily embodies the power to purchase equipment to carry out such work. *Cf. Board of County Comm'rs v. McCulloh,* 52 N.M. 210, 217–18, 195 P.2d 1005, 1009–10 (1948) (grant of express power to erect public building implies power to purchase necessary land on which to erect it). A county, being a political subdivision of the state, possesses such powers as are expressly granted to it by the legislature, together with those necessarily implied to implement its express powers. *El Dorado at Santa Fe, Inc. v. Board of County Comm'rs,* 89 N.M. 313, 317, 551 P.2d 1360, 1364 (1976); *Colfax County v. Angel Fire Corp.,* 115 N.M. 146, 149, 848 P.2d 532, 535 (Ct.App.1993).

Indisputably, the County possesses the authority to construct or repair county roads within its boundaries. *See* NMSA 1978, §§ 4–37–1; 4–38–24 (Repl.Pamp.1992). Thus, we think it is clear that the power to refinance equipment used for this purpose is necessarily embraced within this general

power, except where the County seeks to refinance outstanding revenue bonds. Here, the County did not issue refunding bonds, but undertook to apply a portion of the monies derived from revenue bonds for the purpose, among other things, of constructing, maintaining, and improving public roads, and acquiring and financing "equipment, vehicles and other personal property for such purposes." We find no constitutional or statutory restriction upon the County's use of revenue bond proceeds to refinance the acquisition of its road building equipment. Thus, we conclude that the district court erred in invalidating that portion of the bond issue and the proceeds relating to refinancing.

### (C) Statutory Challenges to the Bond Issue

■ In addition to the constitutional challenges discussed above, the Boltons have also challenged the validity of the bond issue on a number of statutory grounds. Specifically, they argue that the bond issue was void because, inter alia, Section 3-31-1 fails to authorize the issuance of revenue bonds or the use of bond proceeds for refinancing the lease-purchase debts previously incurred; the public notice adopted by the County relating to the bond issue did not disclose all of the intended uses of the bond proceeds; the bond ordinance adopted by the County did not disclose certain terms of the bonds, such as the revenues sought to be pledged as security for repayment, the interest rates, and cost of issuance; the notice of the bond ordinance required to be published was defective and was not timely or properly filed; the cost of the bond transaction was not disclosed; there were inconsistencies between the County ordinance authorizing the issuance of the bonds and the Trust Indenture; and that some of the purposes for which the bonds were issued were unlawful.

The district court, at the urging of the County and Cross-Appellants, denied each of the Boltons' statutory challenges to the validity of the bond issue and held that they were barred by the statute of limitations contained in NMSA 1978, Section 6-14-7 (Repl. Pamp.1993). The latter statute provides:

> After the passage of thirty days from the publication required by [NMSA 1978, Section 6-14-6] of the Public Securities Limitation of Action Act, any action attacking the validity of any proceedings had or taken by ... any public body preliminary to and in the authorization and issuance of the public securities described in the notice is perpetually barred.

In seeking to deflect the effect of this statute, the Boltons argue that the statute applies only to "procedural defects" and not "lack of power." The language of the statute makes no such distinction. However, it does refer to attacks on the "validity" of any proceeding. The Boltons' attack on the legality of the County's bond issue ordinance is an attack on the validity of the proceedings in which the ordinance was enacted. As such, it is subject to the statute of limitations, except as to the constitutional issues previously discussed. See Taos County Bd. of Educ. v. Sedillo, 44 N.M. 300, 305, 101 P.2d 1027, 1030–31 (1940) (where there is general power to borrow money and issue bonds therefor, statute of limitations protects proceedings against attack except for constitutional grounds).

■ The Boltons also argue that the time limitations imposed under Section 6-14-7 were tolled by reason of the County's misrepresentations and nondisclosures in the notice of publication and in the bond ordinance itself. They argue that the notice of publication required by NMSA 1978, Section 6-14-6 (Repl.Pamp.1993), giving notice of the adoption of such resolution was not fulfilled because County Ordinance 1990-3 failed to disclose or specify that the bond issue included in its purposes the erection of a county office building or the refinancing of personal property. They also argue that the County's adoption of a second county ordinance, No. 1990-4, to add building improvements and refinancing and the County's failure to publish such ordinance effectually tolled the running of the statute of limitations, that the omissions on the part of the County constituted fraud, and that the district court erred in refusing to find that the County was es-

topped from asserting the time requirements of Section 6–14–7. We find these arguments unpersuasive.

■ The County published a timely notice of the first bond ordinance. The district court properly found that the Boltons' statutory challenges to the bond issue were barred by their failure to timely assert the claimed irregularities within the thirty-day time limit imposed by Section 6–14–7. We do not believe the delay in publication of the second notice tolled the statute of limitations or amounted to a statutory defect. *Cf. Sedillo*, 44 N.M. at 303, 101 P.2d at 1029 (failure to publish in Spanish resolution calling for bond election held an irregularity cured by the appellants' failure to timely challenge within statute of limitations). The statutory claims raised by the Boltons were filed on June 29, 1991, more than a year after the County issued the bonds on June 14, 1990. The district court found that the purposes which the Boltons challenged in their petition were set out in the Trust Indenture and offering circular that were public records as of June 14, 1990. When a litigant is relying on fraudulent concealment or estoppel to toll the running of a statute of limitations, the statute is tolled until the right of action is discovered or, by the exercise of ordinary diligence, could have been discovered. *Hardin v. Farris*, 87 N.M. 143, 146, 530 P.2d 407, 410 (Ct.App.1974). The ordinance in the case at bar alerted the Boltons that bonds were to be issued and that they would be issued for the purposes set forth in the Trust Indenture. Implicit in the district court's ruling was a determination that the Boltons could have, with the exercise of ordinary diligence, discovered all of their claims at the time the Trust Indenture and offering circular became public records. Since the time for asserting their claims expired almost a year before the petition was filed, the district court properly granted summary judgment as to these claims.

■ The Boltons also argue that the provisions of Section 6–14–7 purporting to impose a thirty-day statute of limitations upon actions challenging the validity of a bond issue is unconstitutional because the time period provided is so unreasonably short that it violates constitutional due process guarantees. The thirty-day statute of limitations imposed by Section 6–14–7 is activated by the publication of notice as provided in Section 6–14–6. Our review of this statute fails to reveal any infringement of the Boltons' due process rights. The purpose of the statute of limitations specified in Section 6–14–7 is to put in repose any nonconstitutional question of law or fact that may subsequently be raised affecting the validity of the bonds. In view of the need for issuance of bond issues by numerous public entities, we do not believe the thirty-day statute of limitations imposed under the Public Securities Limitation of Action Act unreasonably restricts legitimate challenges to the validity of such bond issues. In *Oliver v. Board of Trustees*, 35 N.M. 477, 480, 1 P.2d 116, 118 (1931), our Supreme Court upheld a district court's ruling rejecting a challenge on similar grounds to a thirty-day statute of limitations for protesting municipal improvements. The Court in *Oliver* held in part:

> Short periods of limitations on the right to attack proceedings such as these are present almost invariably in legislation of this kind. 5 McQuillin, Municipal Corp. (2d Ed.) pp. 826 and 854. The reason therefor is well stated ... in the case of *Edmonds v. Town of Haskell*, 121 Okl. 18, 247 P. 15, 19, where it said:
>
>> "This statute has a twofold purpose, and a twofold effect, viz: That of stabilizing and maintaining the credit of a town in the commercial world, and thereby benefitting property owners by maintaining a sound credit for their town, and on the other hand it carries assurance to contractors and investors in town securities that the legal obligations of the town must be met."

*Oliver*, 35 N.M. at 480, 1 P.2d at 118. Similarly, the County's delay in filing the notice of County Ordinance No. 1990–4 did not have the effect of tolling the time limitations of Section 6–14–7 because the County had already published and filed the notice of its prior Ordinance No. 1990–3, thereby placing all interested parties on notice of the proposed bond issue. Nor do we believe Plaintiffs' response to Cross–Appellants' motion

for summary judgment contained matters which gave rise to material disputed issues of fact as to matters which would estop the County from raising the defense of statute of limitations or indicate a basis for fraud. *Cf. Romero v. U.S. Life Ins. Co.,* 104 N.M. 241, 242–43, 719 P.2d 819, 820–21 (Ct.App.1986) (affirming trial court's determination that the plaintiff's complaint failed to properly allege sufficient matters indicating that statute of limitations had been tolled).

Because we determine that the district court erred in holding that the County improperly sought to utilize a portion of the bond proceeds to refinance road building equipment, it is unnecessary to address the remaining arguments of Cross–Appellants. We have examined each of the remaining issues raised by the Boltons and the County and find them without merit.

*CONCLUSION*

We reverse that portion of the district court's judgment that invalidated the use of the bond proceeds for the purpose of refinancing the purchase of equipment, vehicles, and other personal property for constructing or maintaining public roads. In all other respects, the judgments of the district court are affirmed. The parties shall bear their own costs on appeal.

IT IS SO ORDERED.

PICKARD and FLORES, JJ., concur.